O. H. MAY COMPANY *v.* A. W. EDINGTON, COUNTY COURT CLERK.*

and

PERSONAL FINANCE CO. *v.* A. W. EDINGTON, COUNTY COURT CLERK.

(*Knoxville,* September Term, 1926.)

Opinion filed, November 20, 1926.

1. **CONSTITUTIONAL LAW.** Statutes. Veto. Validity of act.

Upon the passage of an Act by both houses of the Legislature, and its veto by the Executive, the same may become a valid enactment, if not returned with veto, within the time prescribed by the Constitution. (Post, p. 619.)

Citing: State ex rel. v. Dixie Finance Co., 152 Tenn., 312.

2. **TAXATION.** Loan company. Occupation tax. Small loan co., License. Fees.

The payment of fees for official inspection and supervision, for the protection of borrowers under uniform small loan act (Acts 1925, ch. 153), and authorizing to charge in excess of legal rate of interest; does not exempt from payment of the occupation tax on Loan Companies under the General Revenue Act of 1925, chapter 134, the Constitution providing (article 2, section 28), "the Legislature shall have power to tax merchants, peddlers and privileges in such manner as they may, from time to time, direct." (Post, p. 621.)

Citing: McMillon v. City of Knoxville, 139 Tenn., 323.

---

*Pawnbrokers as occupation upon which license fee may be imposed, see 19 R. C. L. 960; 3 R. C. L. Supp. 988.

---

*Headnotes 1. Pawnbrokers, 30 Cyc., p. 1165; 2. Pawnbrokers, 30 Cyc., p. 1165; 3. Pawnbrokers, 30 Cyc., p. 1165.

FROM KNOX.

Appeal from Chancery Court of Knox County.—HON. CHAS. HAYS BROWN, Chancellor.

FOWLER & FOWLER, for O. H. May Co.

CHILD & AILOR, for Personal Finance Co.

JAS. G. JOHNSON, SETH WALKER and WM. WALLER, for A. W. Edington, Clerk.

MR. JUSTICE COOK delivered the opinion of the Court.

These causes involve.identical propositions and were heard together. The bills were filed to avoid the privilege tax imposed by the Revenue Act·of 1925. The complainants admit their classification as Small Loan Companies, defined by the Uniform Small Loan Act, which is Senate Bill No. 355, passed by both houses and vetoed by the Governor, but effective because not returned with the veto within the time prescribed by the Constitution. *State ex rel.* v. *Dixie Finance Co.*, 152 Tenn., 312.

The Chancellor dismissed the bills and complainants appealed insisting through their assignments of error that Senate Bill No. 355, which will be designated as

chapter 153, Acts of 1925, omitted from the published Acts, is a complete scheme of legislation which not only regulates Small Loan Companies, but also imposes a privilege or occupation tax, and that they are not subject to the privilege tax levied by the general Revenue Law.

The caption, preamble and body of chapter 153, Acts of 1925, expresses the intention to protect persons who procure small loans upon assignment of salaries or wages, by regulating the business of those making such loans. The Act provides that all who engage in the business of making loans in sums of $300 or less, upon assignment of wages or salaries earned or to be earned, shall make formal application to, and obtain a license from, the county court clerk who is designated as the licensing official.

A condition to issuance of the license is the requirement that the applicant give particular information without which the license may be withheld, and in addition pay an annual license fee of $50 to the licensing official, and $50 to the State Treasurer for use of Superintendent of Banks. The duty of supervision and inspection is imposed upon the licensing official and the Superintendent of Banks. It is apparent that these payments are to cover the expense of supervision and inspection, and are not intended as an occupation tax; for the county court clerk and the Superintendent of Banks are authorized and directed to supervise and inspect the conduct of the business of those licensed.

The Act, known as the Uniform Small Loan Act, became effective March 24, 1925, and the general Revenue Act, April 16, 1925. The pertinent provisions of the Revenue Act are:

"That each vocation, occupation and business hereinafter named in this section, is hereby declared to be a privilege, and the rate of taxes on such privilege shall be as hereinafter fixed, which privilege tax shall be paid to the county court clerk, as provided by law for the collection of such revenue.

## LOAN COMPANIES AND NOTE SHAVERS

"Each person, firm or corporation engaged in the business of lending money upon salaries or household furniture, in counties of 50,000 inhabitants or over, each per annum .........$250." In counties under 50,000 the tax is graduated, but even in those, loan agents, companies or individuals loaning money for more than ten per cent per annum are taxed $250 per annum.

In the exercise of the police power the legislature intending to protect borrowers of small sums secured by the assignment of wages, enacted chapter 153, Acts of 1925, for the regulation and inspection of Small Loan Companies of the indicated class. They are subject to supervision by the county court clerk and the Superintendent of Banks, and the license fee of $50 to the county court clerk and $50 to the Superintendent of Banks was intended to cover the expense of inspection and supervision by those officials.

By chapter 134, Acts of 1925, the legislature in the exercise of the taxing power levied the occupation tax upon these loan companies. The distinction between the license fee required by chapter 153 and an occupation tax levied by chapter 134 is clearly stated in *McMillan* v. *City of Knoxville,* 139 Tenn., 323; as follows:

"By article 2, section 28, of our Constitution, it is provided that the legislature shall have power to tax privileges in such manner as they may from time to time direct, thus stamping a privilege to pursue an occupation as a tax—more strictly speaking an 'Occupation tax,' but usually called in this jurisdiction a 'privilege tax.'

"A 'license,' in its truer sense, is issued under the police power, while a license may be issued on the payment of an 'occupation tax,' levied under this taxing power embodied in the Constitution, revenue being its primary object, though regulation may be in mind as an incident. The two charges and licenses are distinct things, but confusion of thought arises at times, due to the fact that a license may be issued in either case. In the one case, the power exercised is that to license, and in the other to tax and to license."

It is said if complainants are liable to the county for the occupation tax under the Revenue Law, chapter 134, and in addition subject to the license fee under the Uniform Small Loan Act, chapter 153, that the tax is not $250 but only $25 per annum. This rests upon the assumption that the tax applicable to complainants was imposed by the Revenue Act at page 467, under a provision relating to Personalty Loan Agents. By this provision a tax of $25 per annum is imposed upon those engaged in the business of soliciting, procuring and effecting loans on personal property, and includes solicitors, agents and curbstone dealers who act as intermediary between the borrower and lender, and refers to a class altogether distinct from those taxed at page 459 under the head of Loan Companies engaged in the business of lending money upon salaries or household goods

who are taxed $250 per annum.  The distinction is apparent.

The complainants do not contend that they are engaged in the business of soliciting, procuring and effecting loans, as an intermediary between the borrower and lender, but admit their classification as persons or companies engaged in the business of lending direct to the borrower, upon the assignment of wages or salary.  By paying the license fee and submitting to supervision under the Uniform Small Loan Act they are authorized to charge interest rates in excess of six per cent per annum.  By paying the occupation tax of $250 they may engage in the business of a Loan Company.

The chancellor committed no error.  Affirmed.