J. W. KOEN *v.* THE STATE.

(*Nashville.* December Term, 1930.)

Opinion filed June 10, 1931.

Petition' to rehear denied July 1, 1931.

574

CHARLES M. BRYAN, for plaintiff in error.

J. M. GARDENHIRE, Assistant Attorney-General, and AUST, CORNELIUS & WADE, *Amicus Curiae,* for defendant in error.

HOLMES, CANALE, LOCK & GLANKLER, HAMILTON E. LITTLE and THOS. A. SHRIVER, *Amici Curiae.*

MR. JUSTICE COOK delivered the opinion of the Court.

Plaintiff in error, hereafter referred to as the defendant, was convicted and fined for engaging in the Small Loan Business and exacting usury in violation of section 1, chapter 153, Acts of 1925. He appealed and assigned errors. All of the assignments, save one, challenge the constitutionality of the Act. Through the other assignment of error it is insisted that the Act applies only to persons engaged in the business of lending money on assignments of wages and salaries and does not extend to defendant's business of lending money on the personal obligation of the borrower.

Defendant kept an office or place of business in the City of Memphis under the trade name of Dixie Trading Co., where he engaged in the Small Loan Business, taking notes from the borrower, coupled with a power of attorney authorizing the confession of judgment after maturity for the amount of principal and for an attorney fee.

While the notes were made payable thirty days after date, the payees testified that they were required to pay every two weeks. For a $5 loan the borrower repaid $6 and the $5 was reloaned to him upon the same terms. For a $10 loan the borrower paid $12 and the $10 was

reloaned on the same terms, and at the same ratio in transactions for greater sums. The record shows twelve transactions running for different periods where the defendant exacted $1 for the loan of $5 for two weeks and increased the charge accordingly as the loan increased.

In the trial court defendant's counsel stated "he admits that within twelve months prior to the filing of this indictment he was engaged in the business of lending money at greater rates of interest than six per cent and he has not complied with the provisions of chapter 153, Acts of 1925. He admits, if the statute is valid, he has violated it."

A reference to the evidence shows that none of the loans by defendant exceeded $300 and that the rate of interest charged by him exceeded in some instances 400 per cent per annum. These facts bring the defendant within the provisions of the statute.

The statute was designed to regulate the business of making small loans to persons in need of funds to meet immediate necessities and to protect them from the rapacity of the small loan shark and his accomplices in graft, who might be employed to abusively use the processes of attachment and garnishment for the enforcement of the usurious contract. The statute extends to all who engage in the business of making such loans, including within the definition of persons engaged in the small loan business those who lend money at usurious rates under the guise of an advancement upon wages and take assignments to secure the advancement. (See Mc-White v. State, 143 Tenn., 222.)

The Act is open to no other reasonable construction, as may be seen from section 1, which reads:

"No person, firm, or corporation shall engage in the business of making loans of money, credit, goods or

things in action in the amount of Three Hundred Dollars ($300) or less and charge, contract for or receive a greater sum than six per cent (6%) per annum therefor, except as authorized by this Act and without first obtaining a certificate from the Superintendent of Banks and a license from the County Court Clerk (hereinafter called the licensing official) of the county in which the said person, firm or corporation proposes to do business. The provision of this Act shall apply to all persons, firms and corporations engaged in the business of buying, purchasing or taking assignments of any wages, or salary due or to any future salary or wages, who for the purposes of this Act shall be deemed to be engaged in the business of loaning money." ·

The Act conforms to the requirements of Article II, Section 17, of the Constitution. We quote the title:

"AN ACT to license and regulate the business of making secured or unsecured loans in the sums of Three Hundred Dollars ($300) or less, prescribing the rate of interest and charge therefor and penalties for the violation thereof, and regulating the assignment of sale of wages or salaries earned or to be earned when given as securities for such loan or transaction."

Under this general title the legislature wrote an Act to regulate the small loan business, a business that has made itself distinctive in our social and economic system by its practices toward the ignorant and helpless members of society who are its patrons. In the Act to regulate that distinctive business the legislature could, of course, embody the regulations required to accomplish the object designed. *House* v. *Creveling,* 147 Tenn., 589. See also *State* v. *Persica,* 130 Tenn., 55, and cases cited.

 The Act does not purport to be, and is not, an amendatory or repealing Act. It is independent and complete within itself and the fact that it might impliedly impair the force of some other statute would not affect its validity because the antecedent law impliedly affected was not mentioned in the caption. Such an Act is not within the constitutional requirement of Article II, Section 17, as to amendments. 1 Lewis' Sutherland Statutory Construction, section 239; *State* v. *Taylor,* 119 Tenn., 229.

 The Act embodies but one general subject, that of regulating the small loan business, and therefore does not violate the two-subject clause of Article II, Section 17, of the Constitution. Its validity is questioned upon the ground that the classification of the small loan business, omitting banks, bankers and loan companies, is arbitrary, and that it otherwise violates Article I, Section 8, and **Article XI, Section 8,** of the State Constitution and the Fourteenth Amendment.

 Some discretion must be conceded to the legislature in the classification of trades, calling, businesses and occupations for purposes of regulation and taxation. If the selection and classification of the subject of legislation or taxation is not capricious or arbitrary, and rests upon some reasonable consideration of difference of policy, it cannot be said that there is a denial of equal protection of the laws contrary to the Fourteenth Amendment. *Brown-Forman Co.* v. *Kentucky,* 217 U. S., 563; *American Sugar Refining Co.* v. *Louisiana,* 179 U. S., 89; *Rast* v. *Van Deman & Lewis Co.,* 240 U. S., 342.

 Those engaged in the small loan business constitute a distinctive class of money lenders and their practices invited public attention, subjecting them to

regulation as a distinctive class. The Act being applicable to all of the class and to all within it who are similarly situated, and being grounded upon a very distinctive difference between the small loan business and legitimate banking and money lending—a difference peculiar to and inhering in the very nature of the small loan business which the Act was designed to regulate, it cannot be said that its provisions violate either Article I, Section 8, or Article XI, Section 8, of the State Constitution.

The applicable rule is illustrated by our cases of *State v. Railroad*, 124 Tenn., 1; *Scott v. Nashville Bridge Co.*, 143 Tenn., 86; *Hamilton National Bank v. Amster*, 134 Tenn., 537.

Nor does the Act violate Article XI, Section 7, of the Constitution requiring the legislature to fix an equal and uniform rate of interest. It fixes the uniform rate at six per cent per annum, and limits the maximum service fees that the lender may impose for investigating the moral and financial standing of the applicant and the nature and value of the assurance for repayment of the loan and other necessary expenses and losses for closing the loan to a maximum charge of three per cent per month. By thus prescribing the maximum expense fee, the legislature did not intend to fix it as a definite charge in addition to the interest.

Recognizing the right of a lender to charge a reasonable fee for services to the borrower (*Mallory v. Columbia Mortgage & Trust Co.*, 150 Tenn., 219), the legislature fixed this maximum to prevent abuses of the system and declared in the last paragraph of section 17 of the Act that—

"No loan for which a greater rate of interest, fee or charge than is allowed by this Act, has been contracted for or received wherever made shall be enforceable in this State and any person who in any wise participates therein shall be subject to the provisions of this Act."

"The weight of authority is clearly to the effect that payment by the borrower of reasonable expenses incident to the loan, and of reasonable compensation for trouble and services involved in, or necessitated by, it, when paid and received in good faith, for such purposes only, and not as consideration for the loan, do not constitute usury, even though they make the cost of the transaction to the borrower exceed the maximum legal interest.

"This is on the theory, as stated in *Lassman* v. *Jacobson* (1914), 125 Minn., 218, 51 L. R. A. (N. S.), 465, 146 N. W., 350, Ann. Cas. 1915C, 774, that 'expenses incident to making the loan and furnishing the lender satisfactory security for its repayment can in no sense be considered compensation for the use of the money loaned.' " Note III, 21 A. L. R., p. 819.

The legislature could not authorize the lender to arbitrarily fix a monthly expense fee of three per cent in addition to the annual interest on loans and did not intend to do so. As stated, the object was to fix a maximum service charge beyond which the lender could not go without making a conclusive case against him resulting in the forfeiture to the borrower of the entire loan, together with the charges thereon. It left the loan company and the borrower free to agree upon a reasonable service charge which in no event could exceed the maximum of three per cent per month. The Act is susceptible to that construction.

If a doubt existed it must be resolved in favor of the Act because the courts cannot properly adjudge an Act invalid unless the violation of the Constitution is, in their judgment, clear, complete and unmistakable. *Henley* v. *State,* 98 Tenn., 680. This question was not considered, hence not involved in the case of *O. H. May Co.* v. *Edington,* 154 Tenn., 618. The concluding paragraph of that opinion, therefore, is not to be considered as a construction of the Act or any portion of it. The court was there but reiterating the complainant's contention concerning the classification of its business for purposes of taxation.

Numerous other assignments of error raise constitutional questions but these are without merit and are overruled.

The judgment of the trial court is affirmed.