Andrew J. LaFever, et al.

*v.*

S. R. Ware, Sr., et al.

365 S. W. 2d 44

(*Nashville,* December Term, 1962.)

Opinion filed February 7, 1963.

MALCOLM C. HILL, JIM CAMP, HUGH M. CARMICHAEL, WILLIAM H. MITCHELL, C. C. GEER, OLIVER BRADLEY, S. G. BUTLER, RICHARD LYKENS, DAVID SNODGRASS, Sparta, for appellants.

FOUTCH & LEFEVRE, Smithville, for appellees.

MR. JUSTICE WHITE delivered the opinion of the Court.

This case is here on appeal from a decree of the Chancellor sustaining certain grounds of the demurrer and

holding unconstitutional Section 15 of Chapter 35 of the Private Acts of 1953 and Chapter 283 of the Public Acts of 1961.

The Court decreed that the bill, as amended, was properly filed under the Declaratory Judgments Act and that the record presented a justiciable issue, with which we agree.

The defendant, Ralph Hutson, was nominated in the Democratic Primary in August, 1961, by a majority of one vote, for the office of Judge of the Court of General Sessions of White County, Tennessee. His name was certified as such nominee by the White County Election Commissioners and placed on the official ballot which was used in the General County Election held on August 2, 1962, at which time he was elected to serve as Judge of said Court. Mr. Hutson is not a licensed attorney nor is it contended that he is learned in the law.

Section 4 of said Private Act confers jurisdiction upon the Court, established thereby, concurrent with that of the "Circuit and Chancery Courts of the State of Tennessee to try and dispose of divorce cases in the same manner and with the same authority as is vested in the Circuit and Chancery Courts of the State of Tennessee, and an appeal from the judgment of this Court in all divorce matters shall be to the Court of Appeals or to the Supreme Court in the same manner as provided in such cases from the Circuit and Chancery Courts".

Section 18 of said Act provides that the Judge of said Court has authority to interchange with the Circuit Judge and Chancellor, and they with him.

Section 15 of said Act, which was declared unconstitutional by the Chancellor, provides that the Judge of the Court of General Sessions of White County *"shall be a licensed attorney* of the State and a resident of the County in which he resides". (Emphases supplied.)

Chapter 283 of the Public Acts of 1961, being T.C.A. sec. 17-119, provides:

"In addition to the qualifications provided for judges by article 6, secs. 3 and 4 of the Constitution of Tennessee, judges of the Supreme Court, Court of Appeals, chancery courts, circuit courts, and criminal courts, and courts exercising the jurisdiction imposed in one or more of the last three (3) named courts, shall be *learned in the law,* which must be evidenced by said judge being *authorized to practice law in the courts of Tennessee."* (Emphases supplied.)

The complainants aver that the aforesaid Acts are constitutional and, therefore, Ralph Hutson is ineligible to fill the office of Judge of the Court of General Sessions of White County, Tennessee.

Article 6, Section 4 of the Constitution of Tennessee states:

"The Judges of the Circuit and Chancery Courts, and of other inferior Courts, shall be elected by the qualified voters of the district or circuit to which they are to be assigned. Every Judge of such Courts shall be thirty years of age, and shall before his election, have been a resident of the State for five years and of the circuit or district one year. His term of service shall be eight years."

■ There is no question that the Court created by said Private Act of 1953, and to which Mr. Hutson has been elected to preside over, is one of the inferior Courts referred to in the above section. *Taylor v. Wilson County,* 188 Tenn. 39, 41, 216 S.W.2d 717 (1949).

Since said Section 4 is applicable, we then must consider whether or not the Legislature has the power to prescribe qualifications for the office of Judge over and beyond those specifically set out in the Constitution. In other words, are such qualifications as set out in the Constitution the only requirements or shall they be considered as the minimum requirements to which the Legislature may, on a reasonable basis, make some additions.

It could be argued that the Legislature retains full power to prescribe qualifications for the office so long as they are not squarely in conflict with the conditions enumerated in said Section 4. It might be also argued with some plausibility that the conditions enumerated are exclusive and that the Legislature may never restrict the privilege of holding a judicial office beyond the conditions so enumerated.

Finally, it might be argued that the proper interpretation of said section lies between these two extremes; that is, that the conditions imposed by the Constitution are the minimum requirements rather than the exclusive requirements. If this be true, then may the Legislature properly prescribe additional conditions which meet the test of reasonableness.

Commencing with the Public Acts of 1870 our Legislature has made various provisions for the appointment of Judges by the Governor to fill a vacancy in the office

of Judge by death, or resignation, or by sickness or incompetency. Such Acts now appear in the official code of Tennessee as follows: .

T.C.A. sec. 17-112 provides that when a vacancy occurs in the office of Circuit Judge, Chancellor, or Special Court of equal dignity or above his successor shall be selected by the voters at the next biennial election in August occurring more than thirty (30) days after such vacancy, and in the meantime the Governor shall appoint a person "learned in the law" and constitutionally qualified to discharge the duties of such office until such election can be had.

T.C.A. sec. 17-115 provides for the appointment by the Governor of some person "learned in the law" to fill a vacancy in the office of County Judge under the conditions therein set out.

T.C.A. sec. 17-202 provides that upon certification of the incompetency of one or more of the Judges of the Supreme Court the Governor shall appoint the "requisite number of competent lawyers" to dispose of said causes.

T.C.A. sec. 17-204 provides that in case of sickness of any one or more of the Judges of the Supreme Court, the Governor shall have the power to commission persons "learned in the law" to fill the vacancy during the illness of said Judge or Judges.

T.C.A. sec. 17-221 provides that in the event of the incompetency of any Judge named therein the Governor shall appoint some person "learned in the law" to hold said Court or try said cause or causes in which said Judge certifies his incompetency.

T.C.A. sec. 17-222 provides that when any Judge named therein certifies his inability to hold his Court because of sickness or other physical disability, etc., the Governor shall commission some "competent lawyer" to attend and hold said Court during the absence of any such Judge.

Therefore, it is obvious that the Legislature has always considered that it had the authority to prescribe additional qualifications to the holders of judicial office to those specifically set out in the Constitution.

This Court has upheld various statutes, T.C.A. secs. 17-214, 17-215, 17-225 which provide for the election of Special Judges from among "members of the Bar". See *Radford Trust Company v. East Tennessee Lumber Company,* 92 Tenn. 126, 21 S.W. 329 (1893); *Brogan v. Savage,* 37 Tenn. 689 (1858); *Ligan v. State,* 50 Tenn. 159 (1871).

The Court in *Kivett v. Mason,* 185 Tenn. 558, 206 S.W. 2d 789, and in other cases, gave its approval to the use of the words "learned in the law" in the description of persons eligible to hold judicial office. In *Heard v. Moore,* 154 Tenn. 566, page 572, 290 S.W. 15, page 17, 50 A.L.R. 1152 (1926) it was held: "The Legislature could have as well used the words 'licensed attorney,' if it were intended that the county judge should be such, and thus have made the requirement certain and unquestionable." Nevertheless, while technically the insertion of the phrase "learned in the law" does not add to the qualifications required of a candidate, these were the words absent from Article 6, Section 4; while words of similar import are used in Article 6, Section 11, viz.: "Men of law knowledge." Unless the phrase in Article 6, Section 11 is to be considered as mere surplusage the decision of this Court approving statutes employing this language must

be regarded as militating against the second view set out above.

■ Moreover, while the responsibility for determining the meaning of the Constitution of this State rests in the last analysis with the judiciary, our Court has always given careful consideration to the interpretation placed on the Constitution by the legislative branch of the government. *Derryberry v. State Board of Election Commissioners,* 150 Tenn. 525, 266 S.W. 102 (1924).

■ Construction of the constitution adopted by the legislative department and long accepted and acquiesced in by the people is entitled to great weight, and in the absence of some showing of palpable error, is to be accepted as a correct interpretation. *State ex rel. Weldon v. Thomason,* 142 Tenn. 527, 221 S.W. 491. (Case cited and approved therein) Cooley's Constitutional Limitations, page 531; *State ex rel. Coleman v. Campbell,* 3 Tenn. Cases 355; *State ex rel v. Nashville Baseball Club,* 127 Tenn. 292, 154 S.W. 1151.

■ The history of the judiciary of Tennessee, as reflected in the statutory laws, customs and accepted practices for more than 100 years, recognizing only "lawyers", "attorneys" and those "licensed and authorized to practice law" as eligible to election or appointment to the Appellate Courts, Circuit Courts, Chancery Courts, Criminal Courts is to be given great weight in determining the constitutionality of any Act involving the judiciary. Constitutions are to be construed with reference to well known practices and usages.

The statutes now under consideration were enacted subsequent to the decision in *Kivett v. Mason,* thus mani-

festing an understanding of that decision by the Legislature quite different from the interpretation placed upon it generally, and by the Chancellor in this case.

In Throop on Public Officers, Section 73, page 82 (1892) it is stated:

"The general rule is that the legislature has full power to prescribe qualifications for holding office, in addition to those prescribed by the constitution, if any, *provided that they are reasonable,* and not opposed to the constitutional provisions, or to the spirit of the constitution. Thus it is believed that there can be no valid constitutional objection to the statutes, which are now very common, prescribing special qualifications for particular offices, as that the person filling the same shall be a lawyer, a physician, an architect, or otherwise skilled in the particular duties devolved upon him by the office." (Emphases supplied.)

In Professor Mechem's text on Public Offices and Officers (1890) at Section 66, page 22, it is said:

"Where * * * the constitution does not prescribe the qualifications, it is the province and the right of the legislature to declare upon what terms and subject to what conditions the right shall be conferred.

"And where the constitution has made some provision, but not exclusive ones, the legislature may add such others as are *reasonable and proper."* (Emphases supplied.) See *State ex rel. Attorney General v. Covington,* 29 Ohio St. 102 (1877); *Darrow v. People,* 8 Colo. 417, 8 P. 661 (1885).

In the case of *In re O'Connor,* reported in 180 Misc. 630, 43 N.Y.S.2d 412 (1943) it was said:

"The rule seems to be well established that * * * if the constitution creates an office and has prescribed qualifications therefor, the Legislature may then prescribe additional qualifications not prohibited by the Constitution, so long as they do not interfere with nor nullify those constitutionally prescribed."

■ Article 6, Section 154 of the Alabama Constitution provides that Judges of Courts of record shall be citizens of the United States and of Alabama for five (5) years, not less than twenty five (25) years of age and (except in certain instances) learned in the law. The Legislature enacted a statute adding the requirement that such Judges must also be qualified electors. The Court in upholding the statute said:

"The State of Alabama, being a government of general powers, and the Constitution not being the source of but a limitation on the power of the Legislature, section 154 of the Constitution does not prohibit the Legislature from prescribing qualifications for the office of judge." *Mitchell v. Kinney*, 242 Ala. 196, 5 So.2d 788, 793 (1942).

To the same effect are the cases of *Glasco v. State Election Board*, 121 Okl. 119, 248 P. 642 (1926) which cited Throop and Mechem as above, *Shub v. Simpson*, 196 Md. 177, 76 A.2d 332, appeal dismissed 340 U.S. 881, 71 S.Ct. 198, 95 L.Ed. 640 (1950). (Affidavit of Loyalty added as a requirement for candidacy).

Next in the case of *Boughton v. Price*, 70 Idaho 243, 215 P.2d 286 (1950) it was held that the age qualification set by the State Constitution was but a minimum requirement and that the legislature might prescribe other limi-

tations on the right to hold judicial office so long as constitutionally reasonable.

We believe this view should, and does, prevail in Tennessee. It provides a clear justification for cases upholding the statutes, permitting the members of the Bar present in Court to elect one of their members as temporary judge. Such is a *reasonable* means of providing for the dispatch of judicial business. ''The legislature has unlimited power of legislation, except so far as it is restrained, expressly or by necessary implication, by the Constitution of the United States and the Constitution of the state.'' *Bell v. Bank of Nashville,* 7 Tenn. 269, and many other cases to the same effect.

In the case of *Kivett v. Mason,* supra, the Court was dealing with a requirement that the Judge be ''a practicing attorney''. There are many able and outstanding members of the Bar who are learned in the law and are still not ''practicing attorneys''. Therefore, the Act under consideration in *Kivett v. Mason* created an *unreasonable* classification for those permitted to hold judicial office.

Is there any distinction between the qualification required of a judge to be ''a practicing attorney'' and one requiring that he be ''authorized to practice law''? While to a layman it might seem that any distinction between the two is purely theoretical, those of the profession can quite readily recognize the difference between the two. Many men and women pursue the study of law and acquire legal training who, through choice or chance, do not engage in the active day to day practice of the law.

Those with licenses to practice may readily be found pursuing careers in business, in government service, in

accounting, in education, and particularly as professors of law. Their law training is of great value and usefulness to them and to others, even though they are not in the accepted sense of the term "practicing attorneys". Could it be said with any degree of reasonableness that one of outstanding ability as a professor and teacher of law would not be permitted to serve as a judge merely because he could not be classified as "a practicing attorney"? We do not think so.

It is an easy matter to determine from public records the names of those who are licensed to practice law, but it is entirely a different matter to determine the exact meaning of the term "practicing attorney".

Our Courts have found it increasingly difficult to define with accuracy the meaning of the word "practice of the law" or "engage in the practice" when it is sought to enjoin laymen from this activity. See *Bar Association of Tennessee, Inc. v. Union Planters Title Guaranty Company,* 46 Tenn. App. 100, 326 S.W.2d 767 (1959). It is not difficult to imagine many situations which would make adoption of such a classification of "practicing attorney" undesirable. Is house counsel for a large corporation, or a professor of law, or an attorney called into the armed services in the time of war or peace, or an attorney who becomes a member of the Congress of the United States, or some one who is holding a state or county public office, or who is already a member of the judiciary, within the term "practicing attorneys" so as to make him eligible to serve as judge as in the Kivett case? In that case the original Act, being Chapter 532 of the Private Acts of 1929, declared that only those "learned in the law" were eligible to serve as County Judge of Claiborne County.

This classification seems to be on a reasonable basis.

However, by Chapter 351 of the Private Acts of 1937 the words "learned in the law" were stricken and the words "a practicing attorney" were substituted therefor. This restricted qualification would have prohibited the persons just referred to from occupying the office of County Judge of Claiborne County. It was this qualification, and nothing more, which was stricken down as being unconstitutional in the *Kivett v. Mason* case. In other words, there can be no justification for such an *unreasonable* classification. Any language in the Kivett case that goes further is dictum and, therefore, unnecessary to the result reached in that case.

Therefore, we are dealing with an entirely different situation herein than that dealt with in the Kivett case. In the Private Act under consideration there is a provision that the holder of the office shall be a "licensed attorney" and in the general Act, T.C.A. sec. 17-119, it is provided that he (the judge) shall be "learned in the law, which must be evidenced by said judge being authorized to practice law in the courts of Tennessee". If one is a licensed attorney of this State, then, of course, it follows that he is authorized to practice law in the Courts of Tennessee. The provisions of the two Acts in this regard, therefore, mean the same thing.

In the case of *In re Bartz,* 47 Wash.2d 161, 287 P.2d 119, 123 (1955) it was said:

"The requirement that justices of the peace be attorneys is not an unreasonable one, since the duties of that office are best discharged by persons having training in and knowledge of the law. Neither is the classifica-

tion based upon population an arbitrary one. Rural areas produce comparatively little litigation and often cannot support an attorney. Where the exact line between the larger and smaller populations [shall] be drawn is necessarily a matter of legislative discretion.''

Finally, it should be re-emphasized that the Statute involved in the Kivett case restricted eligible persons to "a practicing attorney". Applied literally this would mean that one already serving as a judge in office would not be eligible for the position since he would not be "a practicing attorney", at the time he was elected or appointed. A similar conclusion would be reached with reference to the governmental officials, office holders, law teachers and other persons qualified in the law but not actually so engaged in the practice at the time of election or appointment to such office.

A restriction of this nature is clearly unreasonable and inconsistent with our Constitution on the subject and for this reason the Act was stricken down.

Mr. Justice Tomlinson, speaking for the Court in the Kivett case, said, 185 Tenn. at page 564, 206 S.W.2d at page 792:

"If the legislature can limit the selection of the voters to a list composed only of practicing attorneys, then, by the same token, it can further abridge this constitutional privilege of the voters by limiting them to an election of one of a list of attorneys who have practiced for not less than such number of years as the legislature may desire to fix.''

This language shows beyond doubt that the Court at that time considered the classification of "a practicing attorney" to be improper and unreasonable.

Also in the Kivett case it was found that Judge Kivett possessed the necessary qualifications of "a practicing attorney" at the time he was elected to the office in about the year 1944. Sometime thereafter his license to practice law was revoked and then the effort to oust him from office was made.

■ It is a general rule of law, well recognized in our State, that the holder of a public office, duly elected, qualified and inducted for a fixed term acquires certain property rights of which he may not be arbitrarily deprived. See *Rhea County v. White*, 163 Tenn. 388, 43 S.W.2d 375.

It is part of the judicial history of our State that Judges of the Supreme Court, Court of Appeals, Chancery, Circuit and Criminal Courts and Courts with concurrent jurisdiction with any of our inferior Courts have always been without exception, as far as we have been advised, licensed attorneys. It is universally recognized that historical facts, usages and customs have great weight in construing constitutions. Not only have lawyers been traditional occupants of the bench but the wisdom of this traditional custom has for many years been recognized by the legislature and, by the acquiescence of the public, has become a firm and accepted practice.

Since the adoption of our Constitution, there has been a complete change in the basic economics of our State in that we are now primarily an industrial state rather than one devoted almost exclusively to agriculture. This change has resulted in the enactment of many new laws, the creation of Boards and Commissions and many decisions upon these matters, all of which makes it necessary for a Judge to be fairly familiar with and to under-

stand and appreciate said Statutes and their effect and application.

The Private Act in question confers upon the Court created thereby jurisdiction over and beyond that generally conferred upon a Court of General Sessions. We do not see how it reasonably could be presided over by a layman. The duties are many and varied, including the power to hear and dispose of divorce cases. It is universally known that the trial and disposition of such cases touch nearly every facet of the law and it is beyond the understanding of this Court that any person untrained in the law could think himself competent to discharge the complex duties of this office. Section 18 of the Private Act in question also provides that the Judge of said Court may interchange with Chancellors and Circuit Judges in the trial of cases generally, becoming for the time a nisi prius judge of a Court of record having unlimited jurisdiction.

In recent years the Legislature when creating a Court having concurrent jurisdiction with that of the Chancery and Circuit Courts has always provided that the same be presided over by a person learned in the law or licensed to practice law. We construe these terms to be synonymous.

Even in the Magna Charta agreed to in 1215 it was provided:—"We will not make any justiciaries, constables, sheriffs or bailiffs, but from those who understand the law of the realm and are well disposed to observe it."

We do not believe that either of said Acts is violative of Article 11, Section 8 which prohibits class legislation. Under the Acts every person who is authorized to practice or who may hereafter be authorized to practice in

the Courts of Tennessee is eligible to serve as a Judge. There is nothing unreasonable or arbitrary about this classification of said Section 8 of Article 11 which prohibits only those classifications which are unreasonable and arbitrary. *Cosmopolitan Life Insurance Company v. Northington,* 201 Tenn. 541, 300 S.W.2d 911.

The Cosmopolitan case quoted with approval the case of *Scott v. Nashville Bridge Co.,* 143 Tenn. 86, 108, 223 S.W. 844, 850, in which it held:

" 'It is the general rule that statutes public in their character, and otherwise unobjectionable, may extend to all citizens or be confined to particular classes * * *.' "

■ Therefore, we believe that the standards or requirements as are now in Section 4 of Article 6 of the Constitution are minimum only and that the Legislature possesses the necessary power and authority to add to these qualifications provided it does so on a reasonable basis, and we hold that it did so in passing the Acts now under attack. We believe these Acts to be reasonable and proper and consistent with sound logic as applied to the existing situation. After all there is no war between the Constitution and common sense.

The members of the Bar of White County, all of whom joined in this proceeding either as parties or as counsel, are to be commended for their efforts to maintain our judicial system as second to none in the States of our union. Counsel for the appellees are likewise commended for their diligence and efforts in presenting this matter of great public interest to the Court for decision.

The action of the Chancellor is, therefore, reversed and a decree will be entered in accordance with this opinion.