James E. Williams et al., Appellees.

*v.*

Joe C. Carr et al., Appellants.

404 S.W.2d 522.

(*Nashville,* December Term, 1965.)

Opinion filed May 16, 1966.

Petition to Rehear Denied June 23, 1966.

JAMES L. BOMAR, JR., Shelbyville, HARRIS GILBERT, W. HAROLD BIGHAM, and EDWIN F. HUNT, Nashville, for appellants.

CARMACK COCHRAN, Nashville, amicus curiae.

HENRY H. HANCOCK, Memphis, and GEORGE F. McCANLESS, Attorney General, and MILTON P. RICE, Assistant Attorney General, Nashville, for appellees.

Mr. Justice Creson delivered the opinion of the Court.

Appellees here, complainant below, James E. Williams, a citizen of Shelby County, Tennessee, Z. Cartter Patten, a citizen of Hamilton County, Tennessee, and Lewis D. Pride, a citizen of Davidson County, Tennessee, filed an original bill seeking a declaratory judgment and an injunction in the Chancery Court of Davidson County, on December 20, 1965. Named as defendants were appellants here, Joe C. Carr, Secretary of State of the State of Tennessee, Robert H. Roberts, Co-ordinator of Elections, State of Tennessee, and Louis J. Allen, George Thomas, Jr. and Carl McInturff, members of the State Board of Elections, State of Tennessee. Also named as a defendant was the Attorney General of the State of Tennessee, George F. McCanless, who appears in the Court as an appellee. The somewhat unusual posture of the State Attorney General on this record is explained by the fact that under date of May 10, 1965, while the questioned legislation was in process, he rendered an

opinion on same by request of the Speaker of the Senate. His opinion was that a portion of Chapter 3 of the Public Acts, Extraordinary Session of 1965, was violative of Article 2, Section 6 of the Constitution. The particular offending Section is now codified as Tennessee Code Annotated Section 3-102. In the court below, three others were permitted to intervene as defendants, representing various interests throughout the State. They were John Chisolm, Ben West, Charles H. Anderson and Tennessee Farm Bureau Federation, Inc. During the pendency of the cause, Mr. Carmack Cochran, of the Nashville Bar, was appointed Amicus Curiae by the Chancellor. Mr. Cochran has also ably appeared in this Court.

The original bill averred that various defendants were officers of the State of Tennessee, and charged with certain duties in connection with elections of this State. The entire legislation, including that portion here in question, is now set forth in Tennessee Code Annotated in Sections 3-101 through 3-110. The real thrust of the original bill was that the portion of the legislation regarding the apportionment of Senators was unconstitutional, as violative of Article 2, Section 6 of the Tennessee Constitution.

In essence, the charge is that Article 2, Section 6 of the Constitution interdicts the division of single counties into Senatorial Districts.

On March 7, 1966, the Davidson County Chancery Court rendered an opinion in which it was held that T.C.A. Section 3-102 is in conflict with Article 2, Section 6 of the Constitution of the State of Tennessee. The rationale of the trial court's decision is thus expressed:

"The constitutional provision considered in this cause is clear, unambiguous and free from doubt. Its meaning is 'clearly two-fold; first, when a senatorial district consists of more than one county the counties shall be adjoining; second, no county is to be divided in forming a senatorial district. There is no necessary relationship between these two thoughts'."

Taking into account the severability clause contained in this legislation, the court below elided what was regarded as the offending provision and allowed the remainder to stand.

On March 8, 1966, the court below entered a decree which denied the injunctive relief sought but granted the relief of declaratory judgment as indicated heretofore. The case was tried below on bill and answer; and appeal has been perfected directly to this Court. Appellants' single assignment of error is as follows:

"The Chancellor erred in holding and declaring that provisions of the Legislative Apportionment Act of 1965 are unconstitutional and violative of Article II, Section 6, of the Constitution of Tennessee, which divide Knox and Hamilton Counties each into two specific senatorial districts, Davidson County into four specific senatorial districts, and Shelby County into six specific senatorial districts; and in failing to hold and declare that the Legislative Apportionment Act of 1965, including the challenged provisions thereof, is valid and constitutional."

At this point, it will serve the purpose of focus and clarity to quote, in full, that Section of the Constitution with which appellees contend T.C.A. Section 3-102 is in conflict:

Article 2, Section 6. *"Apportionment of senators.—* The number of Senators shall, at the several periods of making the enumeration, be apportioned among the several counties or districts according to the number of qualified electors in each, and shall not exceed one-third the number of representatives. In apportioning the Senators among the different counties, the fraction that may be lost by any county or counties, in the apportionment of members to the House of Representatives, shall be made up to such county or counties in the Senate, as near as may be practicable. When a district is composed of two or more counties, they shall be adjoining; and no county shall be divided in forming a district."

Rather than quote, in full, T.C.A. Section 3-102, it will suffice to say that it divides Knox County, Hamilton County, Davidson County and Shelby County into several Senatorial Districts, each one of which districts is to elect one Senator.

The question which is presented here is whether or not the provisions of Section 2, Chapter 3, Acts of the Extraordinary Sessions of 1965 subdividing counties entitled to two or more senators into geographically separate senatorial districts, so as to permit the population of a geographical segment of a county to elect a senator, but to prevent them from voting upon other senators elected from other geographical segments of the same county, violate the provisions of Article II, Section 6, of the Constitution of Tennessee.

Appellants contend that there is no conflict between Article 2, Section 6 of the Constitution of Tennessee and T.C.A. Section 3-102. In support of this contention,

appellants make the following arguments, (1) that the constitutional history of Article 2, Section 6 indicates that were it not for a scrivener's error, a comma, rather than a semi-colon, would appear after the word ''adjoining''; and, with this comma present, the last phrase in the last sentence of Article 2, Section 6 of the Constitution would apply only where the Senatorial District was to be composed of more than one county (2) that in light of similar constitutional provisions in other states, the last phrase of the last sentence of Article 2, Section 6, forbidding the division of a county in forming a district would apply only where the district is composed of two or more counties (3) that there has been no prior legislative interpretation of Article 2, Section 6 which militates against the interpretation placed upon this constitutional provision by the present legislature (4) that the constitution is to be given a broad and flexible interpretation (5) that multiple voting is undesirable; and therefore a system which allows persons in a Senatorial District within a county to vote for one Senator to represent them is desirable, and (6) that under the decision of this Court in *Kidd v. McCanless* (1956) 200 Tenn. 273, 292 S.W.2d 40, this Court is without jurisdiction to give the relief sought.

On the other hand, the appellees contend (1) that the history of the constitutional provision involved requires that it be read with the semi-colon, not the comma, and that the particular sentence in question expresses two separate and distinct concepts (2) that there is no conflict between this provision of the Tennessee State Constitution, as construed by them, and the equal protection clause of the Federal Constitution (3) that various well settled rules of construction support the insistence that

Article 2, Section 6 of the Tennessee Constitution proscribes the division of a county in forming a senatorial district (4) that this Court cannot assume that a scrivener erred in replacing the comma in the Tennessee Constitution of 1796, in the Tennessee Constitutions of 1834 and 1870 (5) that the conditions at the time of the adoption of this constitutional provision in 1870 support their contention that Article 2, Section 6 forbids the division of a County in the formation of senatorial districts (6) that the question of whether or not multiple voting is desirable is not the concern of this Court, but is a legislative question (7) that decisions from other states interpreting constitutional provision similar to our own favor construing the particular sentence in question to prohibit the division of a county in the formation of senatorial districts, regardless of whether or not the district is composed of two or more counties, and (8) that the historic legislative interpretation of this constitutional provision is reflected by the fact that no prior legislature has attempted to divide a county into senatorial districts and that such should be accorded great weight in giving proper effect to the constitutional provision here involved.

Appellants' first argument necessitates a brief analysis of the history of that sentence. The sentence in question appeared in the Constitution of 1796, as follows:

"When a district shall be composed of two or more counties, they shall be adjoining, and no county shall be divided in forming a district."

It is noted that after the word "adjoining", no semicolon appears, but, instead, a comma. There is some indication that the Constitutional Convention of 1834 intended to adopt the sentence as it appeared in the previ-

ous Constitution but that, for some reason it was submitted to the people with the semi-colon in place of the comma, and this semi-colon appeared in the new Constitution. The Constitutional Convention of 1870 adopted Article 2, Section 6 of the Constitution of 1834 as a part of the Constitution of 1870. There seems to be no doubt that when this Constitution was submitted to the people for their approval, a semi-colon, and not a comma, followed the word ''adjoining''. It is the fundamental law of this State that the supreme authority rests in the people. This is apparent upon reading Article 1, Section 1 of the Constitution of the State of Tennessee, as follows:

> ''*All power inherent in the people—Government under their control.*—That all power is inherent in the people, and all free governments are founded on their authority, and instituted for their peace, safety, and happiness; for the advancement of those ends they have at all times, an unalienable and indefeasible right to alter, reform, or abolish the government in such manner as they may think proper.''

It is their intent in adopting a constitutional provision that must prevail. This is emphatically recognized in the opinion of this Court in the case of *Shelby County v. Hale* (1956) 200 Tenn. 503, 292 S.W.2d 745, written for the Court by Mr. Justice Burnett, now Chief Justice:

> ''The Court, in construing the Constitution must give effect *to the intent of the people that are adopting it,* as found in the instrument itself, and it will be presumed that the language thereof has been employed with sufficient precision to convey such intent; and where such presumption prevails nothing remains except to enforce such intent.'' (Emphasis supplied.)

Since this portion of the Constitution was twice adopted by the people in the form in which it now appears; that is, with the semi-colon present, instead of a comma, no valid argument can be made that this Section of the Constitution should be read as if a comma, rather than a semi-colon, were present. This is the position of the court below, appellees and amicus curiae, with which we must, and do, agree.

■ Appellants' second argument is that in light of similar provisions in constitutions of other states, Article 2, Section 6 should be interpreted as proscribing the divisions of counties in the formation of Senatorial Districts only when the district is to be made up of more than one county. As the briefs of appellees point out, the other constitutions to which we are referred by appellants specifically spell out that the prohibition against dividing a county when forming Senatorial Districts applies only when the Senatorial District is to be made up of more than one county. This appeared conclusively to us when we examined the various constitutions brought to our attention in briefs and oral arguments.

From our consideration of the briefs of counsel and our own research, we have found little decisional authority applying a constitutional provision similar in language and intent to that of the Tennessee Constitution, other than *White v. Anderson* (1964) 155 Colo. 291, 394 P.2d 333, and *Denney v. State* (1896), 144 Ind. 503, 42 N.E. 929, 31 L.R.A. 726. In *White v. Anderson,* supra, the provision of the Constitution of Colorado under consideration was as follows:

"Senatorial and representative districts may be altered from time to time, as public convenience may require. When a senatorial or representative district shall be

composed of two or more counties, they shall be contiguous, and the district as compact as may be. No county shall be divided in the formation of a senatorial or representative district.''

The rationale of that Opinion appears from the following:

"It must be remembered that the constitution itself created the first senatorial and representative districts. The first sentence of Section 47 gave to the legislature the power to alter those districts when public convenience might require, but that power was subject to the interdictions that (1) in altering or forming districts the legislature must not join two counties which were not contiguous and (2) they must not divide a county. The language is clear and plain. A grant of power is given in the first sentence of Section 47 and limitations are placed upon that power by the last two sentences.

It will be noted that the first sentence provides for the alteration of such districts as public convenience may require. The second sentence provides for senatorial or representative districts *composed* of two or more counties which must be contiguous, and speaks in terms of whole counties. There is contained in the sentence the notion that a senatorial or representative district cannot be less than a county; in effect it means that if you add to a county other territory to make such district, the added territory must be a county or counties.

(3) The most all-inclusive proposition in the three sentences is contained in the third. It provides that '(n)o county shall be divided in the formation of a senatorial

or representative district.' 'No county' cannot be construed as meaning that one county, or two counties, or three counties may be divided; it plainly directs that there is not one county in the state of Colorado that may be divided in the formation of a senatorial or representative district.''

\* \* \* \* \* \* \* \* \*

''If the citizens desire to amend the constitution so as to permit such division, it is within their power to do so, but until they so act, neither legislature nor court can do it for them.

(4) There is a presumption that the language and structure of a provision in the constitution were adopted by choice, and that discrimination was exercised in the language and structure used. *People v. May,* 9 Colo. 80, 10 P. 641. Choice and discrimination in these respects give no solace to the Attorney General.''

A part of the reasoning used in the Indiana case as to a constitutional provision very similar to ours is applicable here, and is as follows:

''The people of a county have common interests and objects, peculiar to themselves, and intimate public relations with each other. Hence, when the constitution was formed, it was deemed of vital importance that the integrity of counties, in the formation of legislative districts, should be thus carefully guarded, 'to the end that each county having sufficient population should have its own representatives in the legislature, chosen by its own electors, and them only, and owing no divided, perhaps conflicting, allegience to any other constituency.' ''

We are impressed with, approve, and apply the reasoning of the Colorado and Indiana Supreme Courts on the constitutional question. It seems entirely consistent with the general constitutional principles enunciated in the decisions of this Court.

Appellants' third contention is that while one or more counties in Tennessee have, for almost one hundred years, been entitled to and been represented by more than one Senator, and such Senators have been elected on a countywide basis, that this does not represent a legislative interpretation of this provision of the Constitution as interdicting the division of a county into Senatoral Districts wholly within that county. While this Court does not rely heavily upon the fact that no prior Legislature has ever sought to divide a county into districts, it does seem to this Court to provide some indication that prior Legislatures have acted on the view that Article 2, Section 6 of the Constitution prohibited such action.

This Court is in full agreement with appellants' argument four, that the Constitution is to be given a broad and flexible interpretation, where there is ambiguity; so that interpretation is necessary. In support of this argument, the appellants cite many rules of construction that are well known to the bench and bar. We are not in disagreement with any of these rules of construction, nor are we in disagreement with appellants' propositions of law. What we say is that such rules are not determinative of the case at bar. This, for the reason that these rules of construction do not come into play until and unless ambiguity appears. It is not the function of this Court to create ambiguity and then to invoke rules of interpretation to resolve same. See *State ex rel.*

*Coates v. Manson* (1900) 105 Tenn. 232, 58 S.W. 319. The following quote from *State ex rel. Coates v. Manson, supra,* sets out this well known and salutary rule:

"The literal interpretation of a statute, according to Lieber's definition, is finding out the true sense by making the statute its own expositor. If the true sense can thus be discovered, there is no resort to construction. * * * It is, beyond question, the duty of courts, in construing statutes, to give effect to the intent of the lawmaking power and seek for that intent in every legitimate way, but * * * first of all, in the words and language employed; and if the words are free from ambiguity and doubt, and express plainly, clearly, and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. It is not allowable to interpret what has no need of interpretation."

The following from the case of *Shelby County v. Hale, supra,* is also particularly applicable here:

"As we have said once or twice above this provision clearly means one thing and when it does the judiciary should not give it another meaning."

Again, this is the position of the court below, appellees and amicus curiae; and, again, we must, and do, agree.

The sentence of Article 2, Section 6, here in question, just as clearly means two things; and it is essential for this Court to apply the Constitution as we do in this case to give effect to the dual concepts embodied in this sentence. It is the opinion of this Court that Article 2, Section 6 unambiguously forbids the division of counties in forming Senatorial Districts; and therefore T.C.A. Section 3-102 is in conflict with this provision of the Constitution.

 Counsel for appellees and amicus curiae have called to the Court's attention certain rules long established in this State relating to statutory construction. So far as the issue here presented is concerned, there is no difference between rules applicable to statutory construction and to constitutional construction. These rules may be summarized as follows—the Legislature has unlimited power to act in its own sphere of legislation except so far as restrained by the Constitution of the United States and of the State, and when an Act of the Legislature is assailed, the specific provision of the Constitution which it is alleged to violate must be pointed out. See *Henley v. State* (1897) 98 Tenn. 665, 41 S.W. 352, 1104, 39 L.R.A. 126, *The Judges' Cases* (1899) 102 Tenn. 509, 53 S.W. 134, 46 L.R.A. 567. There is a presumption in favor of the validity of legislative acts and the courts cannot declare them unconstitutional unless it is clearly shown that they contravene some provision of the Constitution. See *Joyner v. Priest* (1938) 173 Tenn. 320, 117 S.W.2d 9. However, the Constitution is the superior law and every Act in violation of the Constitution is void and the judiciary is obligated and empowered to so declare. See *Peay v. Nolan* (1928) 157 Tenn. 222, 7 S.W.2d 815, 60 A.L.R. 408, *Henley v. State* (1897) 98 Tenn. 665, 41 S.W. 352, 1104, 39 L.R.A. 126, and Marion County, Tenn., *River Transportation Co. v. Stokes* (1938) 173 Tenn. 347, 117 S.W.2d 740. A construction of the Constitution adopted by the legislative department and long accepted by the people is entitled to great weight and will be accepted as a correct interpretation unless some palpable error is shown. *State ex rel. Weldon v. Thomason* (1919) 142 Tenn. 527, 221 S.W. 491, *State ex rel. Coleman v. Campbell* (1875) 3 Tenn.Cas. 355, *State ex rel. v. Nashville Baseball Club* (1912) 127 Tenn. 292, 154 S.W. 1151, and

*LaFever v. Ware* (1963) 211 Tenn. 393, 365 S.W.2d 44. This Court is in complete agreement with the rules thus contended for.

■ Appellants' argument five suggests that the Court consider the desirability and wisdom of this legislation. It is well settled that this Court is without authority to consider the wisdom of Acts of the Legislature. Within its proper sphere of authority this Court can only determine, as it has here, whether or not that body has acted within the authority granted it in the Constitution of this State. See *Peay v. Nolan, Henley v. State,* and *River Transportation Co. v. Stokes,* supra.

Appellants' sixth contention is a suggestion that this Court is without authority to declare this Act unconstitutional under the reasoning in the opinion of this Court in *Kidd v. McCanless,* supra. In answer to this contention, suffice it to say that, had the Court there held the Act apportioning the Legislature to be unconstitutional, it would have virtually destroyed the legislative branch of the State Government, and ultimately brought about the destruction of the State, itself. Here, no such calamity results, for that which we are declaring unconstitutional is only that portion of the Act which divides certain counties into several districts for the election of State Senators.

In conclusion, it is appropriate to note that there is at this time no serious question but that the Federal decisions recognize that if the ratio between population and representation is preserved, the mere fact that multiple representatives to one house are elected from one district does not violate the equal protection clause of the Federal Constitution. See *Reynolds v. Sims* (1964) 377 U.S. 533,

84 S.Ct. 1362, 12 L.Ed.2d 506; *Fortson v. Dorsey* (1965) 379 U.S. 443, 85 S.Ct. 498, 13 L.Ed.2d 401.

The judgment of the trial court is affirmed, with costs against appellants.

The Court has been immensely aided in this case by the full and discriminating briefs and arguments of counsel on both sides of the issue; and takes this opportunity to express its appreciation.

BURNETT, CHIEF JUSTICE, concurs.

WHITE, JUSTICE, concurs separately.

DYER, JUSTICE, dissents.

CHATTIN, JUSTICE, concurs separately.

### Separate Concurring Opinion

MR. JUSTICE WHITE.

While I concur in the conclusion of the opinion written by my Brother Creson, I would add that the legislation stricken down by the opinion is offensive because it dilutes the effectiveness and value of the franchise in the urban counties affected by giving each voter the right to vote for only a fraction of the senators representing his particular interests in that county.

While *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, (1964), states that "Legislators are elected by voters, not farms or cities or economic interests," this is not authority for the proposition that a single economic interest, which is a county, should not elect in proportion to the number of people within that county *all* the legislators who will represent the people of the whole of the county.

To disallow an urban citizen, whose livelihood may depend upon factors outside his immediate sub-district, the

right to vote for senators who should represent the whole county economic unit, would surely dilute the value of his vote. This is so because it effectively dilutes the value of his proposed sub-district's senator's vote as compared with the vote of certain rural senators who represent a whole county.

Private acts passed by the Legislature affect the people in the county as a whole. A senator who represents only one-half, one-fourth or one-sixth of such economic unit, the county, while he may, of course, join with other senators in supporting or rejecting legislation, nevertheless is not obligated to his constituency to do so. This is especially true where one sub-district has needs which are different and may conflict with those of another sub-district. The welfare of the economic unit, the county, should not suffer because of sub-unit differences, especially since the proper concern for sub-county problems belongs with the local county government.

The pertinent part of Article 1, Section 5, of the Constitution of Tennessee, provides that elections shall be free and *equal*. To me it seems that this section of the Constitution is offended by depriving the citizens of an urban area of the equal right to vote for all of those representing them in matters affecting their local government. To hold otherwise would be to deprive each voter in the affected urban areas of their full and equal right to vote for senators representing them as the people in an economic unit, the county.

Separate Concurring Opinion

Mr. Justice Chattin.

It is clear to me Section 6 of Article 2 of the Constitution authorizes the Legislature to form single county

and multiple county Senatorial Districts. The Section is explicit in prohibiting a division of a county in forming a Senatorial District and thus applies to both a single county and a multiple county Senatorial District.

Accordingly, I concur in the opinion written for the Court by my Associate, Mr. Justice Creson.

### Dissenting Opinion

Mr. Justice Dyer.

I most respectfully dissent from the majority opinion filed in this case. As I understand Appellants' position they contend the last sentence in Article II, Section 6 can be plausibly construed in either of two ways. Appellants' brief states this in the following manner:

FIRST:
The quoted sentence can be construed, as we construe it, to refer only to districts composed of two or more counties. In such districts, the counties shall be adjoining and shall not be portions of a county. In other words, recognizing that senatorial districts are frequently composed of two or more counties, this provision was inserted to assure that a county shall not be dismembered, with a portion of it being placed with some counties to constitute a district and other portions thereof being placed with other counties to constitute another district. The provision requires that county lines be respected so that portions of a county will not be joined with other counties or portions of other counties to form one district, while other portions of the same county form another district.

SECOND:
The sentence quoted from the Constitution can also be construed to require that in counties having two or

more senators they shall be chosen by the entire county electorate, with county-wide voting for multiple candidates and with no identifiable constituencies in the county.

(Appellants' Brief)

In support of their position Appellants, among others, cite the following cases:

It is a fundamental rule that an act of the legislature will be upheld if it can be justified upon any rational ground. *McConnell v. City of Lebanon,* 203 Tenn. 498, 314 S.W.2d 12 (1957)

There is a presumption in favor of the validity of Acts passed by the legislature and the courts cannot strike them down unless it is clearly shown they contravene some provision of the Constitution. *Joyner v. Priest,* 173 Tenn. 320, 117 S.W.2d 9 (1938).

In passing upon the validity of legislative enactments, as we are here called upon to do, courts do not assume that the Legislature intentionally passed an invalid act, because legislators, as well as judges, are bound by the law, and it is understood that they weighed the constitutionality of the act while it was before them and held it valid. Wherefore it is the rule that every reasonable doubt must be resolved in favor of the act, and the courts cannot adjudge it invalid unless the violation of the constitution is in their judgment clear, complete, and unmistakable.

*Bank of Commerce v. Senter,* 149 Tenn. 569, 576, 260 S.W. 144 (1923); *Koen v. State,* 162 Tenn. 573, 39 S.W.2d 283 (1931)

This sentence was a part of our original Constitution of 1796. In the Constitution of 1796 before the word ''and'' preceding the last clause of this sentence there was a comma. Upon adoption of the Constitution of 1834 this comma was replaced by a semi-colon and such remains today. The reason, if any, for this change is not explained. From an examination of the Journal of the Constitutional Convention of 1834 it could be said such was an error on the part of the scrivener, or a judgment on the part of the scrivener, that a semi-colon would be more proper punctuation than a comma. The Journal of 1834 does not show this change in punctuation was made in order to change the original meaning of this sentence as adopted in 1796. Even so we do not think whether there be a comma or a semi-colon at this point is material in the construction of this sentence. The court should not strike down an Act of the Legislature on the grammatical difference between a comma and a semi-colon. This is one sentence and we will have to treat it as such.

Inasmuch as this sentence has remained, virtually intact, in our Constitution from the beginning and has never been judicially construed, then we should consider the state of things existing when this provision originated in 1796. *Peay v. Nolan,* 157 Tenn. 222, 7 S.W.2d 815, 60 A.L.R. 408 (1938). In 1796 no county was entitled to more than one senator and seventy five years would pass before such would be the case. There is no ambiguity in this sentence viewed in the light of conditions existing in 1796. This sentence contains two prohibitions. First, against forming a district with other than adjoining counties. Second, against forming a district by using only part of a county. In 1796 both of these prohibitions would necessarily relate to the first part of the sentence which reads: ''When a district shall be composed of

two or more counties." The evils this was intended to prevent are obvious and no doubt the above construction of this sentence is all the framers of the language had in mind.

The United States District Court in Nashville, sitting as a three-judge statutory court, has been dealing with this matter of apportionment for some over six years. In the majority opinion of *Baker v. Carr,* 247 F.Supp. 629 (1965) Judge Miller gives a history of the litigation. In the *Baker* case sub-districting was attacked as in conflict with the Tennessee Constitution. The Federal Court declined to rule on this question but did make the following observation.

"As mentioned above, the plaintiffs primarily attack sub-districting as a violation of the State Constitution. The alleged Constitutional prohibition occurs in Article II, Section 6, which refers only to the apportionment of the Senate, and which reads, in part, as follows:

When a district is composed of two or more counties, they shall be adjoining; and no county shall be divided in forming a district.

There are several possible interpretations of this sentence. One interpretation, urged by the intervening defendant, is based on the fact that the original Constitution contained a comma rather than a semi-colon before the last clause, and that the transition from a comma to a semi-colon may be nothing more than a scrivener's mistake. This interpretation would uphold sub-districting even under the State Constitution." 247 F.Supp. 629.

I agree with the Federal Court this sentence is subject to several possible interpretations and this is particularly

true, when the sentence is read in light of conditions existing today, where one county is entitled to more than one senatorial district.

The Appellees rely upon *White v. Anderson,* 155 Colo. 291, 394 P.2d 333 (1964). In this case a divided court held a multi-district county could not be sub-districted under the following section of the Constitution of Colorado.

Section 47.

"Senatorial and representative districts may be altered from time to time, as public convenience may require. When a senatorial or representative district shall be composed of two or more counties, they shall be contiguous, and the district as compact as may be. No county shall be divided in the formation of a senatorial or representative district."

In this opinion the Colorado Court observed:

The Attorney General would have us construe the section to read, in effect, as follows: "No county shall be divided in the formation of a senatorial or representative district composed of two or more counties, but may be divided for other purposes." This argument might have some weight if the second and third sentences of Section 47 were joined by a semi-colon and the word "but" inserted. We would then have a sentence reading as follows: *"When a senatorial or representative district shall be composed of two or more counties, they shall be contiguous, and the district as compact as may be; but no county shall be divided in the formation of a senatorial or representative district"* or "in the formation of such senatorial or representative district." (Italics supplied.)

As I understand this language by the Colorado Court they are saying: If their Constitution contained the language, indicated by the above italicized sentence used by the Colorado Court as an example in answer to argument, then there would be some weight to the argument the language of their Constitution, prohibiting the division of a county, applied only to districts composed of two or more counties. This italicized language is almost identical with the language found in the Tennessee Constitution. If the last clause in this sentence of the Tennessee Constitution, prohibiting the division of a county, was a separate sentence we would have a different situation, as the Colorado Court has noted.

The Appellees rely upon the case of *Denney v. State of Indiana,* 144 Ind. 503, 42 N.E. 929, 31 L.R.A. 726 (Ind. 1896). This is an able and well reasoned opinion, on the constitutionality of an Indiana Apportionment Act, where several issues were raised and decided; but not the issue of sub-districting a county entitled to more than one senator. Their reliance on this opinion is contained in the following language from the *Denney* opinion:

The people of a county have common interest and objects, peculiar to themselves, and intimate public relations with each other. Hence, when the constitution was formed, it was deemed of vital importance that the integrity of counties, in the formation of legislative districts, should be thus carefully guarded, "to the end that each county having sufficient population should have its own representatives in the legislature, chosen by its own electors, and them only, and owing no divided, perhaps conflicting, allegiance to any other constituency." 31 L.R.A. 735.

In the *Denney* case one of the chief objections to the Apportionment Act was its establishment of ''double districts.'' This was done by combining two or more counties, neither or none of which have a voting population equal to the ratio necessary for a senator or representative, and giving the district so formed more than one senator or representative. The Court found under this method a county having a ratio less than the ratio entitling it to be represented by one senator is nevertheless given a voice in the election of two senators. The Court found this in the language of the opinion ''odious.'' It was under these facts the Indiana Court made the statement copied above from their opinion and it is clear the language has no reference to sub-districting a multi-district county. The reference is to the common interests found in one county as opposed to the common interests of another county.

Even so the Appellees contend the political integrity of a county would be destroyed by division into legislative districts all within the county. This is the gist of the dissenting opinion by Judge Boyd in *Baker v. Carr,* supra. On this argument of political integrity of a county I can follow Judge Boyd's logic, since he is talking about both representative and senatorial districts. In the case *sub judice* we are only dealing with senatorial districts with the knowledge the Act in question divides the same counties for representative districts. It takes the action of both houses of the legislature to enact legislation and, if the political integrity of a county is destroyed by dividing it into senatorial districts, then by the same logic its political integrity is destroyed by division for representative districts. The argument loses its meaning if applied to only one house of a bicameral legislature.

The failure of the Tennessee Constitution to prohibit the division of a county entitled to more than one representative district supports the position of Appellants such is also true of senatorial districts.

Prior to the passage of the Act in question the legislature, in previous apportionment acts, had not chosen to sub-divide a county for either senatorial or representative districts. The Appellees allege this amounts to a legislative finding, long accepted, that the Constitution prohibits sub-districting of a county into senatorial districts. The Appellant's argument here is that the legislature in multi-senator counties has the option to either sub-district or to allow county wide voting. If such be true the legislature by choosing one method would not be making a legislative construction of the Constitution the other method was prohibited. Further in the passage of this Act the legislature saw fit to express its intent, including its intent, in sub-districting counties for both senate and house seats. There is an express legislative finding certain counties are sub-districted in order, "minimize the dilution or cancellation of the voting strength of various ethnic, political, economic, or several elements of the population within such counties." It has been called to this Court's attention the legislature in passage of this Act had knowledge of the case of *Forston v. Dorsey*, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401 (1965). The *Forston* case contains clear language, even though it be dictum, that failure to sub-district a multi-district county will be in violation of the Constitution of the United States, when such failure would minimize or cancel out the voting strength of racial or political elements of the population. Under these circumstances the legislature not only had reason to sub-district but, if such finding be true and they are unchallenged in this record,

it may well have been their duty. I do not find any merit in this argument by the Appellees.

I agree with Appellees the desirability of this legislation is no concern of the courts and give this argument of Appellants no weight.

I think there are three facts supporting the construction given this sentence by Appellants. First, this is necessarily the only meaning the framers of the language in 1796 could have had in mind. If the framers of this language had intended the last clause in the sentence was to refer to other than the opening condition of the sentence, they could easily have made it a separate sentence as was done in the Colorado Constitution. Second, the grammar of the sentence supports the conclusion these two prohibitions relate to the opening condition of the sentence. In the normal use of the English language clauses relating to each other are put in the same sentence. Third, the failure of the Constitution to prohibit the sub-districting of a multi-district county, as to representative districts, supports a conclusion the same is true for senatorial districts.

I realize reasonable and plausible arguments can be made to support either, the theory this sentence unambiguously forbids the division of a county in forming multi-senatorial districts within the county, or that reasonable and plausible arguments can be made the prohibition against division of a county for senatorial districts applies only where the district is composed of two or more counties; but the fact such is the case supports the Appellants' position.

We have here a lawfully enacted statute with a presumption in favor of its validity. It is not shown that the

statute, or any part, clearly, completely and unmistakably conflicts with the Constitution of Tennessee. While reasonable minded men may differ on the interpretation to be given the Constitutional provision under consideration, the legislative interpretation is a reasonable and rational one, and under the legal principles hereinabove mentioned I would give approval to that interpretation which would uphold the entire Act.

## On Petition to Rehear

MR. JUSTICE CRESON.

Since the release of our original opinions in this cause, we have been presented with a petition to rehear on behalf of the State of Tennessee, Amicus Curiae, and appellants. This petition brings to our attention what is designated as "new authority", represented by the opinion of the Iowa Supreme Court of April 15, 1966, in the case of *Kruidenier et al. v. McCulloch et al.,* Iowa, 142 N.W.2d 355. The facts are that this opinion was originally made available to us by supplemental brief filed with us by the present petitioners. This occurred while our original decision was in the process of release, though after preparation of the original opinion. At that time, we thoroughly examined and studied the opinion of the Iowa Supreme Court.

We became convinced then that there were distinctions between the case presented to this Court and that before the Iowa Supreme Court; particularly so in that other provisions of the Iowa Constitution than that provision concerned alone with senatorial subdistricting were given substantial effect. Such provision of the Iowa Constitution has no counterpart in the Constitution of Tennessee. However, had the Supreme Court of Iowa considered

only its provision with respect to senatorial subdistricting, we did not, and do not now, agree with that Court's reasoning. On the subject involved in this case, the people of Tennessee have repeatedly spoken in terms unmistakably clear. It is the duty of this Court to accept and enforce that mandate.

The petition to rehear is denied.