The Metropolitan Government of Nashville,
etc., Appellee,

*v.*

Hillsboro Land Co., Inc., et al., Appellants.

436 S.W.2d 850.

(*Nashville,* December Term, 1968.)

Opinion filed December 13, 1968.

432

EDWIN F. HUNT, Nashville, ROBERT E. KENDRICK, Deputy Metropolitan Attorney, Nashville, NEILL S. BROWN, Director of Law, Metropolitan Government of Nashville and Davidson County, Nashville, and WILLIAM F. HOWARD, Nashville, for appellee.

I. R. SCHULMAN, Nashville, MORRIS J. KRIGER, Memphis, JOHN M. GRISSIM, Nashville, ARTHUR K. HELLERMANN, Milwaukee, Wisc., CHARLES C. TRABUE, JR., and ROBERT W. STURDIVANT, Nashville, for appellants.

MR. JUSTICE CRESON delivered the opinion of the Court.

In this cause, the original bill for a declaratory judgment was filed in the Chancery Court, Part II, of Davidson County, by The Metropolitan Government of Nashville and Davidson County. Defendants were Hillsboro Land Co., Inc., Belz Investment Company, Nabco Corporation, U. Grant Browning, Arthur K. Hellermann, Attorney General George F. McCanless, and Metropolitan Tax Assessor Clifford Allen.

The original bill seeks a determination of whether or not Chapter 325, Public Acts of Tennessee (1967), by implication, repeals Chapter 312, Public Acts of Tennessee (1967); or, alternatively, whether or not Chapter 312 violates Article II, Section 28 of the Constitution of Tennessee.

The Metropolitan Tax Assessor filed an answer to the bill, joining in the prayer of the complainant that the

court below determine the validity and constitutionality of Chapter 312. By order the answer was withdrawn and Mr. Allen realigned as a party complainant.

The defendant George F. McCanless demurred to the bill of the complainants only to the extent that it attacked the constitutionality of Chaper 312.

All of the other named defendants, with the exception of Arthur K. Hellermann, demurred to the bill.

Arthur K. Hellermann filed an answer to the bill; but, by order of the Chancellor, the answer was withdrawn and a demurrer of the same tenor and effect as that of the defendant Hillsboro Land Co., Inc. was substituted therefor. The demurrers of the defendants insist that Chapter 325 does not repeal Chapter 312, and that Chapter 312 does not violate Article II, Section 28 of the Constitution.

Following realignment of the parties, the case was heard upon the demurrers. The Chancellor held (1) that Chapter 325 was comprehensive in nature and ''specifically'' covered the assessment of property, and (2) that Chapter 325, by implication, repealed Chapter 312. The question of whether or not Chapter 312 violates Article II, Section 28 of the Constitution of Tennessee was pretermitted. The demurrers of defendants were overruled. Thereupon, defendants prayed and were granted a discretionary appeal to this Court.

The complainant below, the appellee in this Court, is a metropolitan government of the State of Tennessee, created pursuant to T.C.A. sec. 6-3701 et seq. Hereinafter, the complainant-appellee shall be described as The Metropolitan Government.

The defendant Hillsboro Land Co., Inc. is a Tennessee corporation which owns an apartment complex, the "Versailles Apartments", located in Nashville, Tennessee. The property on which the complex now stands was vacant as of January 10, 1967. After January 1, 1967, improvements which had an estimated value as of January 1, 1968 of $1,700,000.00 were placed on the property. On January 1, 1968, the improvements were estimated to have been 70% complete, but construction was expected to continue until April, 1968.

The defendant Belz Investment Company, a partnership, is the owner of a large tract of land in Nashville, Tennessee. The tract is the location of "100 Oaks", a large shopping center. As of January 10, 1967, the tract was largely vacant, but three buildings were partially or wholly complete. A construction permit for $3,250,-000.00 was issued January 24, 1967, and construction was begun of a large mall building and other structures. More than forty establishments participated in a "grand opening" on October 26, 1967, and other firms have subsequently opened for business. It is estimated that approximately 80% of the shopping center was complete as of January 1, 1968.

The defendant Nabco Corporation is a Tennessee corporation which owns "Parkway Towers", an office building and parking garage in Nashville, Tennessee. This property was assessed as a vacant lot as of January 10, 1967. As of January 1, 1968, approximately $2,000,-000.00 had been invested in the improvements on the property. It is estimated that this investment represents 45% of the total to be invested.

The defendant U. Grant Browning, and others, are the owners of the "Country Squire Apartments", located in

Nashville, Tennessee. As of January 10, 1967, this property was assessed at $36,000.00. Construction of the apartment complex began February 1, 1967, and was from 90% to 95% complete as of January 1, 1968. As of that date, the estimated value of the partially completed apartment units was $625,000.00.

The defendant Arthur K. Hellermann owns the "Edgefield Garden Apartments" in Nashville, Tennessee. The defendant acquired this property from the Nashville Housing Authority January 13, 1967. A construction permit was issued January 24, 1967, in the amount of $650,000.00. As of January 1, 1968, the buildings were virtually complete, except that exterior painting, landscaping and sidewalks were unfinished. It is estimated that the improvements were 70% complete on January 1, 1968.

What is said above brings us squarely face to face with the questions (1) whether or not Chapter 312, Public Acts of 1967, is impliedly repealed by Chapter 325 of the Public Acts of that year, and (2) whether or not the postponement of assessment embodied in Chapter 312, Public Acts of 1967, of real estate in the process of improvement accords with the basic source of all taxation in Tennessee—Article II, Sections 28 and 29 of the Constitution.

All legislative taxing authority in this State is vested by Article II of the Constitution of Tennessee. Sections 28 and 29 are those in focus here. They are, in substance as follows:

Article II, Section 28 of the Constitution requires all property to be taxed according to its value, so that taxes shall be equal and uniform throughout the State. Au-

thority is granted to the Legislature to except (1) such property as may be (a) held by the State, Counties, Cities and Towns, and (b) used for public or corporation purposes, and (2) such property as may be (a) held, and (b) used for purposes which are purely religious, charitable, scientific, literary or educational. Authority is granted to the Legislature to direct the manner of ascertainment of the value of property to be taxed.

Article II, Section 29 of the Constitution grants to the Legislature power to authorize Counties and Towns to impose taxes for County and corporation purposes. Section 29 requires all property taxed thereunder to be taxed according to its value and pursuant to the principles established in regard to State taxation.

Prior to 1967, the basic statutory enactments, pursuant to the above authority, with reference to ad valorem taxation, were embodied in the following sections:

"67-601. *Period of assessment.*—In order to provide revenue for state, county, and municipal purposes, personal property, privileges, and polls shall be assessed annually, and real estate shall be assessed every two (2) years in the odd years."

"67-602. *Reassessment of real estate to include improvements.*—It shall be the duty of the assessor in making his annual assessment of personal property to ascertain whether or not any permanent improvements have been placed upon any real estate previously assessed, so as to increase the value thereof to the amount of two hundred dollars ($200) or more, and in such case he shall reassess such real estate, taking into consideration the value thereof resulting from permanent improvements, which assessments shall in all cases

be made as of the tenth day of January of the year of which the assessment is made.'

It becomes apparent that before the 1967 legislative enactments, assessment of real property for taxation in Tennessee was fixed on a biennial basis in odd years except that, where permanent improvements of a certain minimum value occurred, the statute directed reassessment in the following even year; this, so as to take into account the value of the land as improved.

In 1967, on the same day, the General Assembly enacted Chapter 312 and Chapter 325.

Chapter 312 amended T.C.A. sec. 67-602 so as to add the final proviso clause. That section, as changed, reads as follows:

"67-602. *Reassessment of real estate to include improvements.*—It shall be the duty of the assessor each year to ascertain whether or not any permanent improvements have been placed upon any real estate previously assessed, so as to increase the value thereof to the amount of two hundred dollars ($200) or more, and in such case he shall reassess such real estate, taking into consideration the value thereof resulting from permanent improvements, which assessments shall in all cases be made as of the tenth day of January of the year of which the assessment is made, *provided, however, no property shall be reassessed until the improvements therein have been completed or until eighteen (18) months have passed following the commencement of the construction of the improvement, whichever first shall occur; at which time the owner thereof shall notify the local county and/or city property assessor stating the date said improvements have*

*been completed, occupied or sold. The failure by the
owner to comply with the above provisions shall con-
stitute a misdemeanor punishable as in all other cases
of misdemeanor."* (Emphasis supplied).

Chapter 325 has the effect of amending T.C.A. sec.
67-601; that section, as amended, now reads as follows:

"67-601. *Period of assessment.*—From and after May
26, 1967 all assessments of *real property,* and of per-
sonal property, including merchants' ad valorem as-
sessments, shall be made *annually* and as of January 10
for the year to which the assessment applies. (Empha-
sis supplied).

       \*    \*    \*    \*    \*    \*

No one can dispute that the 1967 enactments have
affected change in the previously fixed basis of biennial
assessment for ad valorem taxation of real property in
Tennessee. Indeed, the parties to this cause not only
concede, but so insist. However, prior to the present
amendments, T.C.A. sec. 67-602 had, for many years,
provided for intermediate assessment in the even year, in
the event of improvement.

It is against this historical background of ad valorem
taxation that the import, significance and substance of
the amendatory statutes here in question must be tested.
Both the briefs and oral arguments pose the present
controversy in terms of whether there is or not irrecon-
cilable conflict between Chapters 312 and 325, with the
result that, if there is, the latter repeals the former; or,
alternatively, whether or not Chapter 312 violates Article
II, Section 28 of the Constitution, in that it creates an
"exemption" from taxation of improved land not
authorized by such Article and Section.

The first contention requires delineation. The real thrust of the insistence is (1) that Chapter 325 affects a change from biennial assessment to annual assessment, (2) that the creation of the system of annual assessment eliminates "reassessments", and (3) stated otherwise, legislative Acts providing for "reassessment" are fatally enervated by another, which eliminates all necessity for the first.

It has always been, and is now, the rule in this State that implied repeal is the offspring of manifest repugnance between an earlier and later statute dealing with the same substance; or, as sometimes stated, the two statutes must be in irreconcilable conflict. *Unicoi County et al. v. Barnett* (1944) 181 Tenn. 565, 182 S.W.2d 865.

It is equally correct to say that this repugnance or irreconcilability must be one between ideas and not merely words.

■ A repeal by implication is indicated, therefore, only when two statutes are manifestly repugnant or in irreconcilable conflict of substance; however, such repugnance or conflict will not be found where any fair and reasonable construction will permit the statutes to stand together. *State v. Smith* (1952) 194 Tenn. 582, 253 S.W.2d 758; *Chicago & Southern Air Lines, Inc. v. Evans* (1951) 192 Tenn. 218, 240 S.W.2d 249.

■ Repeals by implication are not favored; and, if one statute is merely affirmative, cumulative or auxiliary, without inconsistency, the implication of a repeal does not arise. *Bailey et al. v. State* (1924) 150 Tenn. 598, 266 S.W. 122.

■ Section 67-601, as amended by Chapter 325, and sec. 67-602, as amended by Chapter 312, both now provide

for assessment of real property for taxation in both odd and even years. The time of assessment in both enactments is fixed as of January tenth. Then, it necessarily follows that such assessments will be identical in time, purpose, basis, and are to be performed by the same person. It is obvious that there is no need for two statutes, but it is equally true that they are neither inconsistent nor repugnant. Multiplicity of provisions of the same substance, standing alone, is not synonymous with either inconsistence or repugnance.

The pivot of all this, then, is the significance of that part of sec. 67-602 which postpones the time for assessment, as heretofore explained.

This raises the question of constitutionality, not repeal by implication.

In support of his demurrer, the Attorney General denied that T.C.A. sec. 67-602 and the Act amendatory thereof, Chapter 312, were in violation of the uniformity and equality requirement of Article II, Section 28 of the Constitution. The Attorney General insists that postponement of the assessment of property undergoing improvement until either completion of the improvements or expiration of eighteen months is a valid exercise by the General Assembly of its authority to establish the manner and mode of determining value for the purposes of ad valorem taxation.

Prior to enactment of Chapter 312, sec. 67-602 read as follows:

"67-602. *Reassessment of real estate to include improvements*—It shall be the duty of the assessor in making his annual assessment of personal property to ascertain whether or not any permanent improvements

have been placed upon any real estate previously assessed, so as to increase the value thereof to the amount of two hundred dollars ($200) or more, and in such case he shall reassess such real estate, taking into consideration the value thereof resulting from permanent improvements, which assessments shall in all cases be made as of the tenth day of January of the year of which the assessment is made."

Chapter 312 added the following language:

"* * * * * * *

provided, however, no property shall be reassessed until the improvements therein have been completed or until eighteen (18) months have passed following the commencement of the construction of the improvement, whichever first shall occur; at which time the owner thereof shall notify the local county and/or city property assessor stating the date said improvements have been completed, occupied or sold. The failure by the owner to comply with the above provisions shall constitute a misdemeanor punishable as in all other cases of misdemeanor.

* * * * * *,,

The proviso added by Chapter 312, if it means anything, means precisely what its language says; that is, that no property undergoing the addition of permanent improvements shall be reassessed to include the value of the improvements in the assessment until completion of the improvements or the expiration of eighteen months following commencement of construction.

The result of this provision is that, for some indeterminate period of time up to eighteen months, property

may have had valuable improvements affixed, and that these improvements will not be reflected in the assessment of the property in the interim because of the immunity created by Chapter 312.

■ It is entirely clear, and it has been stated here before, that the Constitution grants to the Legislature the authority to direct the manner and mode of the ascertainment of the value of real property for taxation. The primary constitutional mandates governing property taxation in Tennessee are that all property shall be taxed, according to its value, and that taxes shall be equal and uniform.

We are not here concerned with abstruse or evanescent definitions of "value". Chapter 325 was passed expressly to repeal T.C.A. sec. 67-605. Chapter 325 contains, in the very first paragraph, a definition of value:

> *"Basis of valuation.*—All property shall be assessed and taxed according to its value, which shall be ascertained from the evidences of its *sound, intrinsic* and *immediate* value, for purposes of sale between a willing seller and a willing buyer without undue consideration of speculative values." (Emphasis supplied).

The Legislature, itself, thus has defined value as "immediate".

■ Chapter 312 works a postponement of the inclusion of increased value in these assessments, which is in violation of the mandates just above referred to. The Legislature may not exercise its authority to determine the manner and time of assessment so as to thwart the most basic constitutional principles of property taxation:

"Our Constitution requires all property to be taxed according to its value, that value to be ascertained in such manner as the Legislature may direct, so that taxes shall be equal and uniform throughout the State: Art. 2, sec. 28.

Undoubtedly these fundamental principles of taxation are intended to apply to the time at which such taxes are assessed, so that the property taxed shall be so taxed at this value at the time at which the tax is imposed; and also the equality and uniformity of taxation required, are equality and uniformity with taxes on property of like character imposed at or about the same time.

Nor do these requirements present any impediment to providing agencies to reduce assessments, which were, at the time they were imposed, excessive and unequal.

But it is not competent to the Legislature to prescribe a rule for the reduction of assessments, which will violate the manifest object of the fundamental law. That object is that the property must be taxed at its value, at the time the tax is imposed. A tax for 1866 must be for the value of the property in that year, not its value five years before or after. This may be widely different from its value in the year for which it is taxed." *State v. Butler et al.* (1883) 79 Tenn. 410, at 413-414.

We are of opinion, and hold, that Chapter 312 is in violation of Article II, Section 28 of the Constitution of Tennessee.

The court below overruled the demurrers of the defendants; holding that Chapter 325, by implication, repealed Chapter 312 because Chapter 325 was com-

prehensive in nature and covered the assessment of property for taxation. In substance, the court below held that Chapter 312, Public Acts of 1967, is not effective. We are thus in agreement with the result reached in the Chancery Court below, but not for the reason given.

We affirm the result reached below, with the reservation stated. Costs are assessed against the appellants. If counsel deem it prudent so to do, a final decree may be entered in this Court; otherwise, the case is remanded to the Davidson Chancery Court.

DYER and CHATTIN, JUSTICES, concur.

Dissenting Opinion

MR. JUSTICE HUMPHREYS.

In an opinion written for the Court in this case, the pleadings, the facts and the issues have been stated and summarized, so that it will not be necessary to do that again in this opinion. It is sufficient to say that in Metro's suit for a declaratory judgment, against certain selected property owners who were in process of making permanent improvements to their property, Metro contended Chapter 325 of the Public Acts of Tennessee (1967) repealed by implication Chapter 312, Public Acts of Tennessee (1967); or, alternatively that Chapter 312 violates Article 2, Section 28 of the Constitution by creating a class of exempt property contrary to that article and section.

That opinion holds that Chapter 312 was not repealed by implication. It also holds that Chapter 312 does not violate Article 2, Section 28 by creating a class of exempt property. But the opinion does hold that Chapter 312 violates this article and section, in that it results in the

taxation of the particular kind of property dealt with by the amended Code section at less than value, contrary to the ad valorem provisions of the Tennessee Constitution.

The correctness of the holding against repeal of Chapter 312 by implication, and against the contention Chapter 312 creates a class of exempt property, cannot be questioned. However, issue is taken with the conclusion Chapter 312 violates the ad valorem tax provisions of Article 2, Section 28.

Metro selected as defendants certain taxpayers who were in process of improving their property by erecting thereon shopping centers, consisting of a number of different buildings; apartment buildings and office buildings, all in various stages of completion. In each instance the bill alleged the estimated value of the improvements in their incomplete state. But in no instance did Metro allege the value of the property on the basis of its value for purposes of sale between a willing seller and a willing buyer, without undue consideration of speculative values, as provided in Chapter 325.

It was Metro's contention that Chapter 312 prevented the assessment of any of the property being improved until full completion of all planned improvements, or the lapse of eighteen months. With the result, that even admittedly completed and occupied buildings in the shopping center, and obviously occupiable and usable apartments and offices in the other improvements would not be subject to assessment.

This construction of the act is accepted by the opinion mentioned, and upon this construction the conclusion is reached that the act unconstitutionally results in the taxation of property at less than value.

It would have to be conceded that Chapter 312 would be unconstitutional if it were subject only to the construction contended for by Metro and adopted by the first opinion. However, the act, both on the basis of its own language, and by reason of well settled rules of construction, is subject to a construction which saves it from unconstitutionality.

In brief, this construction is that under the express terms of the act, improvements are assessable without regard to the state of completion of the particular improvement, or the improvements as a whole, where any improvement is *occupied*, or where it has been *sold;* which necessarily implies the right to so tax it when it is occupiable, or fairly and reasonably salable as improved property. Also, since a lease is a sale of an interest in property, the provision for assessment on sale would include the right to assess on lease, or upon the property being in a leasable condition. T.C.A. sec. 67-602 as amended by Chapter 312, reads as follows:

*"Reassessment of real estate to include improvements.*—It shall be the duty of the assessor each year to ascertain whether or not any permanent improvements have been placed upon any real estate previously assessed, so as to increase the value thereof to the amount of two hundred dollars ($200) or more, and in such case he shall reassess such real estate, taking into consideration the value thereof resulting from permanent improvements, which assessments shall in all cases be made as of the tenth day of January of the year of which the assessment is made, provided, however, no property shall be reassessed until the improvements therein have been completed or until eighteen (18) months have passed following the commencement of the

construction of the improvement, whichever first shall occur; at which time the owner thereof shall notify the local county and/or city property assessor stating the date said improvements have been completed, occupied or sold. The failure by the owner to comply with the above provisions shall constitute a misdemeanor punishable as in all other cases of misdemeanor."

The construction above arrived at is supported by the provision of the act that *"the owner thereof shall notify the local county and/or city property assessor stating the date said improvements have been completed, occupied or sold."* Since these three conditions are clearly stated in the alternative, it is evident the property is assessable upon the fulfillment of any one of them.

This construction cannot be avoided because of the preceding statement that "no property shall be reassessed until the improvements therein have been completed or eighteen (18) months have passed following the commencement of the construction of the improvement." This for the reason the words "completed, occupied or sold," are definitive of the state of completion of the improvement which will permit taxation, and are obviously intended to limit this term "completed". However, under the most elementary rules of statute construction, even if these last provisions did result in ambiguity, it is our bounden duty to adopt the construction which is constitutional.

First, it is settled that we must give this statute a construction in harmony with the Constitution, although this construction *may not be the most obvious or natural one. Cumberland Telephone & Telegraph Co. v. Hartley,* 127 Tenn. 184, 154 S.W. 531; *Palmer v. Southern Express*

*Co.,* 129 Tenn. 116, 165 S.W. 236; *Bird v. State,* 131 Tenn. 518, 175 S.W. 554.

Yet another rule is that, if the statute, even by a *strained* construction would be constitutional, we must give it that construction. In other words, every reasonable intendment that can be legally indulged, must be made in favor of the constitutionality of the statute. *Memphis Street Railway Co. v. Byrne,* 119 Tenn. 278, 104 S.W. 460; *Kirk v. State,* 126 Tenn. 7, 150 S.W. 83; *Garvin v. State,* 81 Tenn. 162; *Cole Mfg. Co. v. Falls,* 90 Tenn. 466, 16 S.W. 1045; *Henley v. State,* 98 Tenn. 665, 41 S.W. 352, 39 L.R.A. 126; *State ex rel. v. Nashville Baseball Club,* 127 Tenn. 292, 154 S.W. 1151.

*Cumberland Telephone, Palmer* and *Bird,* also declare that we must construe the act in harmony with the constitution, although the construction is not the most obvious or natural one.

In view of these rules, there is no valid reason for reading this statute as prohibiting the horizontal or vertical taxation of improvements to real property where the same are in whole or in part occupiable or salable or leasable, simply because the whole proposed plan of improvement has not been carried out by assessment day, or within eighteen months. To deny such construction and, to the contrary, to fasten on a construction which requires that the whole program of improvements be treated as a unit, would not only be a denial of these accepted and professed rules of construction, but would leave without any evident meaning the unequivocal statute provisions mentioned.

There is another reason why the act cannot be construed as preventing assessment until the completion of

the plan or program of construction. That is, that there is nothing in the entire assessment law, with which Chapter 312 must be construed in pari materia, which either contemplates or requires the assessor to assess in its totality, as a unit, a tract of land as reflected in the owner's deed or deeds. Under this general assessment act, the assessor may regard as an appropriate assessment unit a functional portion of either a tract or a building, as fair and realistic assessment practice requires. This is settled by *City of Nashville v. State Board of Equalization* (1961), 210 Tenn. 587, 360 S.W.2d 458, where a small part of a large building, otherwise exempt because used for religious purposes, was held to be taxable because used commercially.

Yet another reason for this construction is to be found in the nature of the amendment made by Chapter 312. The amendment is made by way of a proviso to an existing Code section. As a proviso, it is our duty to construe it so as not to impinge upon or limit the provisions of the preceding part of the statute more than absolutely necessary. *American Can Co. v. McCanless,* 183 Tenn. 491, 193 S.W.2d 86; *State ex rel. Cope v. Davidson County,* 198 Tenn. 24, 277 S.W.2d 396.

Since the part of sec. 67-602 to which the proviso was added provides in express language for the assessment of improvements made to land between assessment days, and the only limitation upon this is by way of the proviso, the first provision should be allowed the fullest possible operation, and the proviso to the contrary should be allowed the least possible operation.

When such a strict construction is given to the amendment, and it is taken into account that the amendment

refers in one place to "improvements", in the plural, and in another place to "improvement", in the singular, and this is followed by a requirement that the owner thereof shall notify the assessor stating the date said improvements have been *"completed, occupied or sold"*, the construction here given the act is inescapable.

Construing sec. 67-602 under the rules mentioned, and taking into account its own provisions, it authorizes the assessment of all improvements made to property after assessment day, on a horizontal as well as a vertical basis, without regard to plan or program or building permit, where the particular improvement, or part of a total improvement, has progressed to such state of completion as that it is (1) completed; (2) is occupied or subject to occupancy and use in whole or in part; or has been sold or is reasonably salable as an improvement; treating the provision for sale as including a lease. The state of completion of the improvement does not operate to prevent assessment of the property, unless it is such that none of these conditions applies.

Additionally, upon a pari materia construction, bearing in mind the limited purpose of the proviso, it could not possibly have the effect of preventing an increased assessment of the real property on account of an increase in its value, brought about by changed circumstances or conditions in the locality.

When so construed, the act simply does not violate the ad valorem tax clauses of Article 2, Section 28 in any such substantial manner as requires its interdiction.

Although the constitution requires the taxation of all property at value, equally, without regard to specie, it does not say when, where or how this shall be done. The

constitution expressly confers discretion with respect to this on the legislature. Providing, that value for taxation, shall "be ascertained in such a manner as the legislature shall direct,".

In addition to this express vesting of discretion, the legislature, as the agency designated by the constitution to exercise the power of taxation inherent in the state as a sovereign, with plenary power in this regard except as limited by the express terms of the constitution, has full authority without regard to this provision to prescribe a method for assessing property. *Vertrees v. State Board of Elections* (1919), 141 Tenn. 645, 214 S.W. 737; *Jenkins v. Ewin* (1872), 55 Tenn. 456; *Knoxville & O. R. Co. v. Harris* (1897), 99 Tenn. 684, 43 S.W. 115, 53 L.R.A. 921; *State ex rel. Bloomstein v. Sneed* (1876), 68 Tenn. 472, 473.

While the latter aspect of this double authorization is not noted therein, the cases annotated in Note 10, under Article 2, Section 28 of the Constitution, as carried in Tennessee Code Annotated, stand for the proposition that the legislature is the only part of the state government with any discretion with respect to the subject of assessment of property.

It is also settled law that a just and perfect system of assessment is not indispensable to the validity of the assessment procedures as prescribed by the legislature. *Louisville & N. R. Co. v. State* (1874) 55 Tenn. 663. This case recognizes, as do all others on this subject, that assessment procedures at best result in some approximations, and varying of lack of uniformity; and, on occasion, in some injustice. Yet, as this case holds, while a just and perfect system of assessment is to be sought

after, it is not indispensable to the validity of the assessment procedures prescribed.

*McCord v. Nashville, C. & St. L. R. Co.,* 187 Tenn. 277, 213 S.W.2d 196, is illustrative of the length to which this Court has always gone to leave to the legislature the power to provide procedures for the assessment of property. The assessment law there involved provided for valuation of localized property by local tax assessors, and for valuation of distributable railroad property by the Railroad and Public Utilities Commission. The admitted effect of this arrangement was that localized utility property was valued at from ten per cent to fifty per cent of value, while property assessed by the Commission was valued at 100%.

The railroad contended this arrangement, resulting in this admitted discrimination, was invalid. It contended all property should be assessed by a single assessing authority, on the same basis as to value. This contention was disposed of by this Court holding that, where property is sui generis and there is no market overt for it, so that the general standard of fair market value, that is, the price such property would command at a fair, voluntary sale, would have no relevancy, the general assembly would not be precluded from prescribing a standard for that type of property different from that for other property.

It can hardly be denied, that hitherto vacant lands on which construction has been commenced is a character of property which is sui generis, and without a market in the usual sense so that the general assembly should be free to prescribe a procedure for its assessment.

A realistic statement of the problem sought to be met by Chapter 312, which demonstrates its fairness when construed in accordance with this opinion, is made in the Attorney General's brief supporting the constitutionality of the act, as follows:

"The assessing of property in the course of improvement is a task which has always presented unique difficulty for the assessor. While there is a ready market for vacant or unimproved land, and a similar market for land upon which improvements are complete, and the price therefor which a willing buyer would pay a willing seller is usually readily ascertainable, such is not the case with real estate which is in the course of improvement. Few, if any, persons would be interested in purchasing a piece of land upon which a building was one-fourth, or one-half, or three-fourths completed. The designed specifications for a building in such state would be unlikely to appeal to a purchaser who might be interested in the location for the purpose of improving it according to his own needs and desires. Indeed it is more than conceivable that such purchaser would be willing to pay more for the land in a vacant state than with a fractionally completed structure thereon. He would have to reckon with the cost either at removing the semi-erected building or of altering the design thereof to the extent possible to conform to his own needs.

"The General Assembly has never seen fit to prescribe any formula to be used by the assessor in evaluating real estate in the course of improvement. Very obviously, for the reasons noted above, it cannot be said that the tax assessor could determine market value by simply adding together the market value

of the vacant land and the material and labor costs incurred by the owner in bringing the structure to such state of semi-conpletion as might exist on tax day. An assessment level less than such figure would have to rest in the unbridled judgment of the tax assessor. This result was very obviously what the 1967 General Assembly wanted to forestall.''

Commencing in 1907, when the sum of $200.00 was not insignificant, the assessment law expressly provided for ignoring permanent improvements to land between assessment days which did not increase the value of the property by $200.00. Even more significantly, prior to the act of 1907 there was no provision for revaluation on account of improvements from one biennial tax day until the next, resulting in a two-year period of non-assessment of improvements after a tax day. Acts of 1903, Ch. 258, sec. 3.

Yet, even though Article 2, Section 28 commences with the statement that all property shall be taxed, recognizing that the Article does not provide when or how property shall be taxed, whether annually, biennially, or otherwise, and in recognition of the express grant to the legislature of all power to determine all of this, that arrangement was accepted as constitutional. This fact of legislative history calls into play another settled rule of construction: that a construction of the constitution long adhered to (in this case that reassessment of improvements between assessment days was not required by the constitution) will not be disturbed unless so clearly and plainly wrong as to require it.

In *LaFever v. Ware*, 211 Tenn. 393, 365 S.W.2d 44, this rule was recognized and restated: that a construction of

the constitution adopted by the legislative department and long accepted and acquiesced in by the people is entitled to great weight, and in the absence of some palpable error, is to be accepted as a correct interpretation. This proposition was again reconsidered, and restated, in *Williams v. Carr,* 218 Tenn. 564, 404 S.W.2d 522.

Repeating: If it was constitutionally permissible under the ad valorem provision of Article 2, Section 28, to forego altogether the assessment of completed improvements to property between biennial assessment days, then sec. 67-602, as amended by Chapter 312, which does not go this far, but simply recognizes that the bare cost of building materials in an incomplete improvement cannot fairly be said to increase the fair market value of the real estate by that cost, is certainly a permissible exercise of the legislative discretion to deal with special situations in a reasonable way.

It is permissible to observe in concluding this opinion, that this Court, as is true of every state court of last resort, functions in a governmental society of growing complexity. A state society whose legal problems are complicated, as never in the past, by the threat of federal judicial intervention in its affairs by the application of such equal protection and due process notions as fertile federal omnipotence can hardly wait to announce. In this plight, hard and fast attitudes and positions with respect to assessment powers should not be adopted where not absolutely required by express or necessarily implied state constitutional provisions. The legislature should be allowed the broadest possible latitude in providing for the assessment of property. First, because this is what the Constitution authorizes in clear

terms; and second, because the fair use of this power may be, as never in the past, indispensable to a workable, equitable system of taxation in this state.

As herein construed, T.C.A. sec. 67-602 is constitutional.

BURNETT, CHIEF JUSTICE, concurs.