STATE of Tennessee, DEPARTMENT OF REVENUE, Donald W. Jackson, Commissioner, Petitioner-Appellant,

v.

James H. MOORE, Whitwell Branch Manager of First Bank of Marion County, and First Bank of Marion County, Respondents-Appellees,

and

Buck Layne, Jr., Intervenor-Appellee.

Supreme Court of Tennessee,
at Nashville.

Oct. 14, 1986.

Rehearing Denied Jan. 5, 1987.

W.J. Michael Cody, Atty. Gen. and Reporter, Daryl J. Brand, Asst. Atty. Gen., Paul E. Terry, Dept. of Revenue, Nashville, for appellant.

Graham Swafford, Jasper, for First Bank.

Ray H. Moseley, Chattanooga, for intervenor.

## OPINION

DROWOTA, Justice.

On direct appeal from the Chancery Court of Marion County, this case arises out of a petition to enforce an investigative summons issued by the Department of Revenue, the Petitioner. The summons was issued by Petitioner to the Respondent, First Bank of Marion County, in the course of an investigation of the potential tax liability of one of Respondent's customers. Intervenor, Buck Layne, Jr., is the customer who is the subject of an ongoing Department of Revenue investigation. Several significant issues are presented by this case.

### I. The Facts

The facts are simple and undisputed. The Commissioner of Revenue (the Commissioner) is currently conducting an investigation into the possible tax liability of Buck Layne, Jr. The investigation concerns unassessed coal severance taxes, sales taxes, and business taxes. Informa-

tion presently held by the Department of Revenue Special Investigations Unit indicates that funds from potentially taxable transactions may have been deposited in the First Bank of Marion County (First Bank). On July 10, 1985, Special Agent C.K. Johnson issued an investigative summons,[1] which was left at the First Bank addressed to James H. Moore, branch manager. The summons directed him to appear in Chattanooga on July 22, 1985, and to produce the records described in the summons, which requested the following information:

"Any and all bank statements, deposit slips, cancelled checks, signature cards, notes, certificates of deposit, savings accounts, and all other bank records maintained on the following accounts: Buck Layne, Buck Layne, Jr., Buck Layne Leasing, B & J Coal Mining and Leasing Co., M & W Coal Co., or any other accounts controlled by Buck Layne, Jr."

Appearing on July 22 as summoned, Mr. Moore and the First Bank's attorney refused to produce the records on the grounds that they were protected by state and federal law and that production of the records could expose First Bank to a suit by the customer, Mr. Layne. Also present at this meeting on July 22 was Mr. Layne's attorney, Mr. Moseley. The Commissioner subsequently filed a Petition for Contempt on August 15, 1985, in Chancery Court to enforce the summons. First Bank's Answer to the Petition alleged, among other defenses, that the summons was unconstitutional as well as improper and overbroad, and that the records were protected under state and federal statutes. Mr. Layne filed an Intervening Petition on August 30, 1985, moving to quash the summons because no basis existed for the investigation, which was allegedly being used to harrass Mr. Layne.

A hearing was held on September 3, 1985. Mr. Moore and Special Agent J.T. Durham testified. Mr. Moore testified that

he and First Bank would comply willingly with any court order, but that he had sought guidance from the court on advice of the bank's attorney, who was of the opinion that the summons was too broad and violated certain statutes. The testimony of Special Agent Durham generally concerned the nature of his duties and of investigative methods generally, as well as the basis of the investigation into Mr. Layne's potential tax liability. Agent Durham stated that he had seen documents indicating that proceeds from potentially taxable transactions had been deposited in First Bank, but he claimed that statutorily imposed confidentiality, which protects such information during an investigation, prevented him from detailing the evidence. Counsel for the Department of Revenue stated at this point:

"MR. TERRY: Again, [the investigation] was predicated on severance tax recommendation. However, during the course of the investigation, again, we're getting into what did he have uncovered, and to me that is confidential information which is not to be disclosed until the information is compiled, whether he will be indicted or whether he will be charged with the tax liability. At that time avenues are open to Mr. Moseley to determine what information we have compiled."

When Mr. Layne's attorney again pressed to obtain more information concerning the basis of the investigation and whether the investigation was criminal in nature, the Department of Revenue attorney responded:

"MR. TERRY: Your Honor, that information will be available to Mr. Moseley should there be some criminal prosecution against his client, and at that time he has the Grand Jury and the discovery process available to him. All we're asking that we be not impeded in the investigation. This investigation is not conclusive in any manner."

---

1. Running in the name of the Department of Revenue, State of Tennessee, it was signed by a

Special Agent of the Department.

In addition, First Bank argued at this hearing that the Financial Records Privacy Act, T.C.A. §§ 45–10–101, *et seq.*, not only applied in this case to protect the records, but that this statute required the Commissioner to bear the reasonable expenses of producing the records in response to the summons. Mr. Moore testified that the records involved are voluminous and that the search for them was time consuming.

The Chancellor's Order of October 18, 1985, applying the Financial Records Privacy Act to the Department of Revenue and ordering that the Commissioner pay the reasonable expenses of production of the records, restricted the summons to only those bank accounts and records on which Buck Layne, Jr., has signatory authority or on which his name appears. None of the other records sought by the summons were to be produced under this order. The Chancellor then dismissed the Petition for Contempt, but enjoined Buck Layne, Jr., from doing anything to impede the investigation.

The Commissioner appealed to this Court under T.C.A. § 16–4–108. He challenges the Chancellor's decision to enforce the summons only as limited, the order that the State bear the costs of producing the records under summons pursuant to the Financial Records Privacy Act as well as the costs of the proceeding below, and argues that the Chancellor incorrectly dismissed the Petition for Contempt.

## II. *The Law*

### A. Application of Article VI, § 12, Tennessee Constitution

The constitutionality of the summons issued under these tax statutes has been specifically challenged by Respondents under Art. VI, § 12, of the Tennessee Constitution, which provides in relevant part that "[a]ll writs and other process shall run in the name of the State of Tennessee and bear test and be signed by the respective clerks." Respondents contend that the signature of the Special Agent on this summons is constitutionally insufficient, invalidating the process issued.

This provision of the Constitution does not, however, control the authority of the Legislature to authorize nonjudicial process. In *White v. State*, 50 Tenn. 338 (1871), the Court recognized the power of the Legislature to authorize nonjudicial process in aid of the administration of the government. In that case, the Court upheld the constitutionality of a statute that authorized a judge to issue summons to call the venire for jury service. The Court distinguished this type of process from judicial process, by which a court obtains jurisdiction, stating that "[o]riginal process, in the sense of the Constitution, is the means of compelling a defendant to appear in court after suing out the original writ in civil, and after indictment in criminal cases." *Id.*, at 340. The *White* Court further observed that:

"The only object of requiring process to be signed by the clerk is, to give it the stamp of judicial authority. The Legislature would certainly have no power to vary the mode of attesting process in its technical sense, as required by the Constitution; but all precepts from courts of justice, other than such process as is contemplated in the Constitution, [are] under the legislative control."

*Id.* See also *State ex rel. Shriver v. Leech*, 612 S.W.2d 454 (Tenn.1981).

Art. VI, § 12, which is in the context of that article of the Constitution defining the Judicial Department, does not, therefore, require that an investigative summons be signed by a clerk of an issuing court. This conclusion is consistent with the rationale of cases that have construed this provision of the Tennessee Constitution. *See, e.g., Webb v. Carter*, 129 Tenn. 182, 165 S.W. 426 (1913); *Harper v. Turner*, 101 Tenn. 686, 50 S.W. 755 (1899); *McLendon v. State*, 92 Tenn. 520, 22 S.W. 200 (1893); *Wiley v. Bennett*, 68 Tenn. 582 (1877); *Lyle v. Longley*, 65 Tenn. 286 (1873); *State v. Scott*, 32 Tenn. 332 (1852); *Mayor and Aldermen of the City of Nashville v. Pearl*, 30 Tenn. 249 (1850); *Reynolds v. Lowthrop*, 7 Tenn.Civ.App. 12 (1916). These cases deal with the sufficien-

cy of process issued by courts to obtain jurisdiction and involve the issues of the name in which a writ must run and whether the process was duly attested by the clerk of the issuing court. Particularly instructive for this case is *State v. Scott, supra.* There a statute authorized a district attorney general to issue a writ of *scire facias* in certain cases; the Court found that the Legislature did not intend to permit the district attorney to initiate judicial process on his own authority, but rather it intended

> "that he should collect the facts, and file his official information before the court, as a foundation for the writ, and then that the same, like any other process, should run in the name of the state, with the signature of the clerk. It surely could not have been intended that a proceeding of such serious import as this ... should be instituted without any foundation of record, at the discretion of the prosecuting officer."

32 Tenn. at 334. The *Scott* Court found that a *scire facias* was clearly a writ by which a court obtained jurisdiction and thus was controlled by the requirements of Art. VI, § 12. The Court held that the writ was properly quashed due to constitutional defects. Clearly, therefore, these cases stand for the proposition that Art. VI, § 12, does not apply to Legislative authorization of process by which jurisdiction of a court is not thereby obtained.

### B. Administrative Subpoenas and Due Process Protections

The summons in this case was issued by the Department of Revenue under the authority of T.C.A. §§ 67-1-1301, 67-1-1302, 67-1-1437, and Tenn.Admin.Comp. 1320-2-1-.40 and -.41. The Tax Enforcement Procedures Act, T.C.A. § 67-1-1401, *et seq.*, specifically provides in T.C.A. § 67-1-1437:

> *Obtaining evidence.*—(a) EXAMINATION OF BOOKS AND WITNESSES. For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any amount under the provisions of this or

any other title, the commissioner or his delegate is authorized:

> (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

> (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the commissioner or his delegate may deem proper, to appear before the commissioner or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

> (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

> (b) SUMMONS.

> (1) SERVICE. A summons issued hereunder shall be served by the commissioner or his delegate by an attested copy delivered in hand to the person to whom it is directed or left at his last and usual place of abode; and the certificate of service signed by the person serving the summons shall be evidence of the facts it states on the hearing of an application for the enforcement of the summons. When the summons requires the production of books, papers, records, or other data, it shall be sufficient if such books, papers, records, or other data are described with reasonable certainty.

> (2) TIME AND PLACE. The time and place of examination shall be such as may be fixed by the commissioner or his delegate and as are reasonable under the circumstances. In no event shall the time be less than ten (10) days to appear to testify, or to produce books, papers, records, or other data. The chancery court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel

such attendance, testimony, or production of books, papers, records, or other data.

(3) ENFORCEMENT. Whenever any person summoned hereunder neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the commissioner or his delegate may apply to the judge of the chancery court for the division within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the chancellor to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the chancellor shall have power to make such as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience.

This type of process is generally recognized as an administrative or investigatory subpoena. It is issued to compile information necessary to determine compliance with the law consistent with the Executive Department's constitutional duty to "take care that the laws be faithfully executed." Art. III, § 10, Tennessee Constitution. Such investigative process may be, and has often been, authorized by the Legislature. *See, e.g.,* T.C.A. §§ 3–3–108; 4–5–311; 4–21–309; 48–2–118. This Court has previously held that legislative authorization of civil investigative process does not exceed Constitutional limitations as a general rule. *See State ex rel. Shriver v. Leech, supra.* In that case, we recognized that the "purpose of an investigatory proceeding 'is to discover and produce evidence not to prove a pending charge or complaint, but upon which to make one if, in the [agency's] judgment, the facts thus discovered should justify doing so.' *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 201,

66 S.Ct. 494, 501 [90 L.Ed. 614] (1946)." *Id.,* at 457.

While we have found no constitutional defect with the type of process issued by the Commissioner under Article VI, § 12, we now address the validity and sufficiency of the summons and consider the right to judicial review of the kind of process issued in this case. This issue determines whether Respondents may be held in contempt for refusing to respond to the summons before the scope and validity of the summons had been tested in court.

As a preliminary matter, considering that a Special Agent issued the summons as the Commissioner's delegate, although we restricted the authority of the Attorney General and Reporter to delegate the power to issue investigative subpoenas under T.C.A. §§ 8–6–401, *et seq.,* in *State ex rel. Shriver v. Leech, supra,* we observed that "the power granted by the ... statute is of a quasi-judicial nature which should not be delegated absent express [legislative] authority to do so." 612 S.W.2d at 456. T.C.A. § 67–1–1437 expressly authorizes the Commissioner or his delegate to issue investigative summons, unlike T.C.A. § 8–6–401, which limits this authority solely to the Attorney General and Reporter. Nevertheless, the authority to issue civil investigative process is not left uncircumscribed, as this type of process carries limited coercive effect and "does not authorize an immediate intrusion into a protected zone of privacy, but authorizes the taking of testimony and the production of documents at a time subsequent to service...." *Id.,* at 458. Moreover, as we further stated in *State ex rel Shriver v. Leech, supra,* quoting *See v. City of Seattle,* 387 U.S. 541, 542–543, 87 S.Ct. 1737, 1738–1739, 18 L.Ed.2d 943 (1967):

" '[W]hen an administrative agency subpoenas corporate books and records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome.... In addition, while the demand to inspect may be issued by the agency, in the form of an

administrative subpoena, it may not be made and enforced by the inspector in the field, and the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply.' "

*Id.*, at 458. Thus, Art. I, § 7, of the Tennessee Constitution as well as these due process requirements will deter unreasonable civil investigative demands or subpoenas from being arbitrarily issued by the Executive Department.

■ Nor are we convinced that constitutional limitations, such as those imposed by Art. I, §§ 7, 8, or 14, of the Tennessee Constitution, are wholly unimplicated in every case in which civil administrative or investigatory process is issued. In this case, we note that the State intimated at the hearing that criminal charges could flow from this investigation. The Constitution prohibits general searches and, with great particularity, limits the powers of the government when engaging in criminal investigations. Civil process cannot be substituted for the more rigorous constitutional requirements of criminal procedure. While we expressly reserve judgment on this issue, as the Supreme Court of the United States observed in *United States v. LaSalle National Bank,* 437 U.S. 298, 317, 98 S.Ct. 2357, 2367–2368, 57 L.Ed.2d 221 (1978), civil investigative authority will not permit the government to expand its criminal discovery powers.

### C. Application of Financial Records Privacy Act: Implied Amendment of Tax Enforcement Procedures Act

Having determined that the Commissioner's authority to issue the summons in this case suffers from no constitutional defects, the application of the Financial Records Privacy Act, T.C.A. §§ 45–10–101, et seq. (Supp.1985), must be considered. We have been called upon to construe both T.C.A. § 67–1–1437 and the Financial Records Privacy Act for the first time. T.C.A. § 67–1–1437, which is part of the Tax Enforcement

Procedures Act, was enacted in 1972; T.C.A. §§ 45–10–101, *et seq.,* was passed in 1983.[2] We first consider the effect, if any, of the Financial Records Privacy Act on the Tax Enforcement Procedures Act.

By enacting the Financial Records Privacy Act, the Legislature recognized that customers of financial institutions and the financial institutions themselves have a legitimate expectation of privacy in their records. Further, the act also encourages adequate record keeping by protecting this interest in privacy and preventing unauthorized intrusions into the affairs of the customers and institutions. The controlling question is whether the Legislature effectively amended the Tax Enforcement Procedures Act when it passed the Financial Records Privacy Act.

T.C.A. § 67–1–1402 of the Tax Enforcement Procedures Act specifically provides:[3]

"(c) In the event of any conflict between the provisions of this part and those of any other specific statutory provisions contained elsewhere in this title, or in any other title, it is hereby declared to be the legislative intent that, to the extent such other specific provisions are inconsistent with or different from the provisions of this part, the provisions of this part shall prevail. Provided, however, that there shall be preserved and prevail over this part such other provisions of this title or of any other title which govern, restrict, or confer special authority or powers upon the commissioner or his delegate in the exercise of their responsibilities to enforce the collection of public taxes and which are not inconsistent with the provisions of this part...."

The Financial Records Privacy Act, however, explicitly includes in the definition of a "person" "any department or agency of this state ... and any court of this State." T.C.A. § 45–10–102(6) (Supp.1985). In T.C.A. § 45–10–102(7), a "subpoena" is defined to mean "any writ, order, or other

---

**2.** T.C.A. §§ 67–1–1301 through 67–1–1305 were enacted in 1963.

**3.** *Cf.* T.C.A. § 67–1–101 (Liberal construction of commissioner's power).

writing directed to a financial institution, or an officer thereof, and requiring the production of a financial record or records...." Clearly, these definitions can encompass both the Department of Revenue itself and the investigative summons issued in this case.

■ While "[r]epeals and amendments by implication [are] not favored," *English v. Farrar*, 206 Tenn. 188, 196, 332 S.W.2d 215, 219 (1960), they "are recognized as a matter of necessity." *Id. See also, e.g., Oliver v. King*, 612 S.W.2d 152, 154 (Tenn. 1981); *State v. Hudson*, 562 S.W.2d 416, 419 (Tenn.1978); *Reams v. Trostel Mechanical Industries, Inc.*, 522 S.W.2d 170, 173 (Tenn.1975); *Metropolitan Government of Nashville v. Hillsboro Land Co., Inc.*, 222 Tenn. 431, 440, 436 S.W.2d 850, 854 (1968). Furthermore, a repeal or amendment "by implication is indicated ... only when two statutes are manifestly repugnant or in irreconcilable conflict of substance; however, such repugnance or conflict will not be found where any fair and reasonable construction will permit the statutes to stand together." *Metropolitan Government of Nashville v. Hillsboro Land Co., Inc., supra*, 222 Tenn. at 440, 436 S.W.2d at 854. "An Act may be deemed to amend an existing statute, by implication, even though the existing statute was not mentioned by title or substance." *English v. Farrar, supra*, 206 Tenn. at 196, 332 S.W.2d at 219. Also, the Legislature is presumed to have knowledge of its prior enactments and to know the state of the law at the time it passes legislation. *See, e.g., Neff v. Cherokee Insurance Co.*, 704 S.W.2d 1, 4 (Tenn.1986); *Grubb v. Mayor and Aldermen of Morristown*, 185 Tenn. 114, 122, 203 S.W.2d 593, 596 (Tenn.1947). The rule may be stated that where two acts conflict and cannot be reconciled, the prior act will be repealed or amended by implication to the extent of the inconsistency between them, and a "special statute or a special provision of a particular statute controls a general provision in another statute or general provision in the same statute." *Strader v. United Family Life Insurance Co.*, 218 Tenn. 411, 417, 403 S.W.2d 765, 768 (1966) (citations omitted). *See also Dorrier v. Dark*, 537 S.W.2d 888, *petition to rehear denied*, 540 S.W.2d 658 (Tenn.1976).

■ To the extent that the procedures for obtaining financial records from a financial institution are more exacting and restrictive, the Financial Records Privacy Act impliedly amends the previously enacted Tax Enforcement Procedures Act, regardless of T.C.A. § 67–1–1402. T.C.A. § 67–1–1402 is a general provision of the prior enactment and itself recognizes that "there shall ... prevail over this part such other provisions of ... any other title which *govern, restrict,* or confer special authority or powers upon the commissioner or his delegate...." T.C.A. § 67–1–1402(c) (emphasis added).

The Financial Records Privacy Act cannot be construed other than to restrain the more general evidence gathering powers of the Department of Revenue under T.C.A. §§ 67–1–1301, 67–1–1302, and 67–1–1437. The Legislature has provided definitions in T.C.A. § 45–10–102 that not only include the Department of Revenue, but T.C.A. § 45–10–103(4) expressly permits the financial institution to make disclosures when the "making of reports or returns required under the tax laws ... of this state" is involved. Clearly, the Legislature contemplated that the Financial Records Privacy Act would have some effect on the Commissioner's authority and thus on the Tax Enforcement Procedures Act. The powers of the Commissioner of Revenue to obtain evidence from a financial institution under T.C.A. § 67–1–1437, or the other tax provisions cited above, have thus been restricted, especially considering that the Financial Records Privacy Act prohibits disclosure except as provided in T.C.A. §§ 45–10–103 and 45–10–104. T.C.A. § 45–10–104 states that disclosure may be made in response to a subpoena that complies with the requisites of T.C.A. §§ 45–10–106 and 45–10–107. We cannot say that the Legislature did not intend the Department of Revenue to be included when, by the terms of the statute itself, the collection and assessment

of tax liabilities have been expressly included. "If there is no conflict between former laws or statutes and a subsequent law or statute and the earlier and later laws involve the same subject matter, they will be construed in pari materia. If there is an irreconcilable conflict, the former laws are repealed [or amended] by implication." *Strader v. United Family Life Insurance Co., supra,* 218 Tenn. at 416, 403 S.W.2d at 767. Although the conflict is not sufficient to work a repeal by implication, the conclusion does follow that the Financial Records Privacy Act, having more specific and restrictive requirements for issuing subpoenas, requires that the Commissioner or his delegate must comply with the provisions of that Act when issuing an investigative summons to a financial institution.[4] These provisions amend the Tax Enforcement Procedures Act insofar as they are more protective, restrictive, and exacting than T.C.A. § 67–1–1437.

### D. Administrative Requisites of the Subpoena

The Financial Records Privacy Act contains the requisites of a subpoena in T.C.A. § 45–10–107, having provided for service under T.C.A. § 45–10–106, which requires that service of a subpoena be made upon a financial institution only if (1) a copy has also been served upon the customer (if available for service), as other subpoenas must be served, or if the customer is named as a party in a judicial proceeding, service is in the manner provided by the Tennessee Rules of Civil Procedure, and (2) in the case of a judicial subpoena, the customer has not moved to quash the subpoena within ten days of service upon the customer, or in the case of other subpoenas, the customer has not notified the issuer of the subpoena within ten days of service on the customer that the customer objects to the subpoena. If a customer objects to a subpoena, "the issuer must petition an appropriate court and obtain the approval of that court before issuing such

subpoena." If T.C.A. § 45–10–106 has not been complied with, the financial institution is not required to produce records. T.C.A. § 45–10–107.

Further, T.C.A. § 45–10–107 requires that the subpoena describe "with specificity the financial records to be produced," including the name and address of the customer, a description of the records, the time period covered by the requested records, and "[a]ny additional information necessary to identify the records...." T.C.A. § 45–10–107 also requires that an institution be allowed no less than 15 days in which to respond, but this section does permit the financial institution to petition a court, after notice to the customer, to extend or shorten the time, but "[n]othing herein shall restrict the power of the appropriate court for good cause shown to cause subpoenas to be issued or responses thereto to be made in less than any of the time periods set forth herein, including instanter." T.C.A. § 45–10–107(b) (Supp.1985).

Significantly, the Financial Records Privacy Act contemplates the due process protections that adhere to any administrative subpoena, which have been generally discussed heretofore, although the Act does expressly permit certain unilateral acts of disclosure of records by the financial institution. T.C.A. §§ 45–10–103(7) and (8) permit disclosure if, under subsection (7), the financial institution deems furnishing such information "necessary or incidental to the performance of the duties of a ... state or local official or agency" placing the discretion over disclosure with the institution, or if, under subsection (8), the information is furnished to a state agency "in response to a subpoena lawfully issued by the official or agency." T.C.A. § 45–10–103(8) also provides that "[a] financial institution may presume that a subpoena which appears valid on its face has been lawfully issued," but such institution is not required to recognize the validity or propriety of a subpoe-

---

**4.** We note here that T.C.A. § 45–10–106(2) distinguishes judicial subpoenas from "other subpoenas," consistent with the distinction observed previously between process within Art.

VI, § 12, Tennessee Constitution, and process that may be authorized by the Legislature to aid in the administration of the laws of this State.

na under this section. The implication of this permissive language, "may presume," is that the financial institution may also contest the subpoena in good faith.

■ Not only does the Financial Records Privacy Act clearly contemplate that due process protections be afforded to financial institutions as well as to their customers, but by explicitly describing the requisites of a valid subpoena, the Act provides both a guide to the financial institution to determine the facial validity of a subpoena under T.C.A. § 45–10–103(8), and grounds for contesting the validity and sufficiency of a subpoena. Whether issued pursuant to T.C.A. §§ 67–1–1301, 67–1–1302, 67–1–1437, or 45–10–101, *et seq.*, "[i]f the subpoenaed party is of the opinion the requests contained in the demand are unreasonable, he can refuse to comply with the demand and raise the issue as a defense to any action brought by [the issuer] to enforce compliance," and "where contested, the production of documents [pursuant to an administrative subpoena] can not be compelled ... without approval of the Chancellor." *State ex rel. Shriver v. Leech, supra,* at 459.

■ Whether contested under the Financial Records Privacy Act or in an action to enforce a subpoena issued by the Department of Revenue, when challenged, the party opposing compliance with the Commissioner's subpoena may in good faith attack the validity, sufficiency, or scope of the subpoena on any appropriate grounds. In such a case, the Commissioner must make a *prima facie* case for compliance, that is, he

> "must show that [1] the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the Commissioner's possession, and [4]

that the administrative steps required ... have been followed...."

*United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). This standard for a *prima facie* case for compliance requires that the investigation be initiated in good faith and with some basis in fact, i.e. for "a legitimate purpose." A merely exploratory purpose that is unsupported by reasonable grounds is not a sufficient basis for an investigation. *See United States v. Bisceglia,* 420 U.S. 141, 151, 95 S.Ct. 915, 921, 43 L.Ed.2d 88 (1975) (Blackmun, J., concurring). The tax liability of the subject of the investigation must be "a reasonable possibility, rather than a matter of sheer speculation." *Id.,* 420 U.S. at 158, 95 S.Ct. at 925 (Stewart, J., dissenting). *See also United States v. LaSalle National Bank, supra,* 437 U.S. at 318, 98 S.Ct. at 2368 (Good faith exercise of investigatory powers required). Relevancy is determined at this stage, not by the evidentiary standard, but rather by a broader standard, requiring only a reasonable expectation that the information will shed light on the taxpayer's potential liability. *See United States v. Arthur Young & Co.,* 465 U.S. 805, 104 S.Ct. 1495, 1501, 79 L.Ed.2d 826 (1984). The third element of the showing requires only that the Commissioner demonstrate a need for information not otherwise available. The last part of the *prima facie* case requires that the applicable statutory requirements have been followed and that no administrative irregularity exists in issuing the subpoena or summons.

E. Expenses of Production of Records

The Commissioner also challenges the Chancellor's order that the State bear the expenses of the production of the records subject to the subpoena. The Commissioner contends that T.C.A. § 67–1–1305,[5] which permits some exercise of discretion

---

5. 67–1–1305. *Compensation of witness.*—Any person, firm or corporation so subpoenaed shall be reimbursed necessary traveling expenses from their home to the place of hearing and other necessary expenses, as determined by the commissioner of revenue or the comptroller of

the treasury, and those persons, firms or corporations not employees of the state shall be paid at the rate of five dollars ($5.00) per day for each day or portion of a day in attendance at such hearings.

by him in determining the reasonableness and necessity of expenses incurred in responding to a subpoena, applies and that the Chancellor erred in awarding First Bank expenses under T.C.A. § 45-10-109. This provision of the Financial Records Privacy Act states:

> "In all judicial proceedings the reasonable expenses of a financial institution in producing records in response to a subpoena shall be taxed as costs, without regard to the amount of any bond, and in all other instances, the issuer shall pay such financial institution's reasonable expenses incurred in complying with such subpoena. The financial institution shall submit to the issuer, either with the records or within thirty (30) days after delivering the records, a statement as to its charges for preparing and delivering the records. Charges by the financial institution at rates which do not exceed those established by the Internal Revenue Service of the Treasury Department of the United States of America shall be deemed reasonable unless otherwise determined by the appropriate court after notice and a hearing."

■ We do not think that these two provisions are necessarily inconsistent. T.C.A. § 67-1-1305 does give the Commissioner some degree of discretion in determining the amount of expenses be paid, but both this section and T.C.A. § 45-10-109 are mandatory. The Commissioner does not have the authority to refuse to pay reasonable and necessary expenses under T.C.A. § 67-1-1305, which is clearly phrased in terms of "*shall* be reimbursed," and T.C.A. § 45-10-109 expressly permits the reasonableness of expenses to be submitted to a court for ultimate determination. Under either statute, reasonableness and necessity could be resolved by a court if the parties could not come to some agreement. While T.C.A. § 45-10-109 does presume that expenses not in excess of the rates of reimbursement established by the Internal Revenue Service are reasonable, this is only a presumption, "unless otherwise determined by the appropriate court after notice and a hearing." General Brand con-

ceded in oral argument that should the Commissioner abuse his discretion under T.C.A. § 67-1-1305, the party seeking reimbursement of expenses could obtain review of the Commissioner's determination in court. Consequently, a repeal or amendment by implication is not involved "where any fair and reasonable construction will permit the statutes to stand together." *Metropolitan Government of Nashville v. Hillsboro Land Co., Inc., supra,* 222 Tenn. at 440, 436 S.W.2d at 854. Since there is no dispute as to the actual amount of these expenses in the instant case, we will not further address this issue at this time.

III. *Application of Law to the Facts*

■ While the summons issued in this case does not suffer from a constitutional defect under Art. VI, § 12, of the Tennessee Constitution, Art. I, § 7, does require that a civil investigative or administrative summons be sufficiently specific to permit reasonable compliance. *State ex rel Shriver v. Leech, supra,* at 458-459. Such process may be subjected to judicial review, and thus First Bank's good faith challenge to the validity and sufficiency of a summons so broadly worded as the one in this case could not be considered contemptuous; moreover, First Bank never claimed that it would not comply but only asserted a legislatively recognized interest in the privacy of its customers' records. The terms of T.C.A. § 45-10-101, *et seq.,* contemplate this very situation. The Commissioner must adhere to the administrative steps required by the Financial Records Privacy Act when seeking records from a financial institution. T.C.A. §§ 67-1-1301, 67-1-1302, 67-1-1437 are less specific and less restrictive than the Financial Records Privacy Act, and thus have been impliedly amended by the subsequent enactment.

■ The Commissioner has demonstrated that the current investigation is being conducted for a legitimate purpose, having a basis in fact. Agent Durham testified that he had seen evidence that funds from possibly taxable transactions

had been deposited in First Bank accounts controlled by Mr. Layne. The summons as limited provides the Commissioner with information relevant to continuing the investigation. Also, the Commissioner has demonstrated a need for the information to further this investigation, not having any other source of information. Although the Financial Records Privacy Act was not complied with by the Commissioner, the Chancellor's order conforms to and applies the requirements of the statute; both First Bank and Mr. Layne participated and were represented in a hearing before compliance with the summons was ordered.

The determination that the summons should be limited is justified by the terms of T.C.A. § 45–10–107. Neither this decision nor the Chancellor's order prevents the Commissioner from issuing subsequent process to First Bank if the evidence justifies it, but the administrative requirements of T.C.A. § 45–10–101, *et seq.*, must be followed and the summons must be sufficiently specific. Moreover, the Chancellor also acted properly in dismissing the Petition for Contempt because First Bank did not stand in contempt of the summons and contempt will not result from a good faith challenge to an administrative subpoena to determine its validity and sufficiency. The Petition being dismissed, the Chancellor correctly taxed the costs of the proceedings to the State. We also think that the Chancellor acted within his discretion in permitting Mr. Layne to intervene. Rule 24, T.R. C.P. Furthermore, this decision is supported by the terms of T.C.A. § 45–10–106, which permits the customer to object to a subpoena and entitles him to notice that it has been served on the financial institution. Finally, the Chancellor was also correct in ordering that the State bear the reasonable and necessary costs of compliance under either T.C.A. § 67–1–1305 or § 45–10–109. These costs have not yet been ascertained and may still be settled by the parties.

Accordingly, the judgment of the Chancery Court of Marion County is affirmed.

The costs of the appeal are taxed to the State.

BROCK, C.J., and FONES, HARBISON and COOPER, JJ., concur.

## OPINION ON PETITION TO REHEAR

The Department of Revenue has filed a Petition to Rehear in this case. Rule 39, T.R.A.P. Fundamentally, the Commissioner of Revenue contends that the Court's opinion overlooks the effect of the prefatory language of T.C.A. § 45–10–103, that "the following acts are expressly permitted by the provisions of this chapter, but are not otherwise subject to" the Financial Records Privacy Act.

We have fully considered the Commissioner's arguments. In our opinion, the language in question provides financial institutions and the governments of this State and the United States the necessary regulatory access to protected records. T.C.A. § 45–10–103 defines certain unilateral, permissible acts of disclosure that may be made by a financial institution without compliance with the other provisions of this statute. All T.C.A. § 45–10–103(8) does is permit a financial institution to rely on and respond to a subpoena properly issued and served under this statute, but this subsection clearly permits an institution to contest the process in good faith. The provision does not create an exception to the subpoena requirements of the Financial Records Privacy Act.

We adhere to our construction of T.C.A. § 45–10–103, which permits certain routine disclosures that are not otherwise subject to the strictures of the act, but all subpoenas issued to financial institutions are covered by the terms of this statute. The Act is unambiguous and will be construed on its face. *Madison Loan and Thrift Co. v. Neff,* 648 S.W.2d 655, 657 (Tenn.App.1982). The Petition to Rehear is denied.